NEW ENGLAND SAVINGS BANK *v.* MEADOW LAKES REALTY COMPANY ET AL.

ANGUS MCDONALD-GARY SHARPE AND ASSOCIATES, INC. *v.* GLEN LAKES REALTY COMPANY ET AL.
(14162)

Dupont, C. J., and Spear and Freedman, Js.

Argued November 7, 1996—officially released February 11, 1997

*John S. Bennet*, with whom was *Lorri A. Massa*, for the appellant (Angus McDonald-Gary Sharpe and Associates, Inc.).

*Michael D. Colonese*, with whom, on the brief, was *Jeffrey F. Buebendorf*, for the appellee (National Loan Investors).

FREEDMAN, J. Angus McDonald-Gary Sharpe and Associates, Inc. (McDonald-Sharpe), brought an action to foreclose its mechanic's lien filed against Meadow Lakes Realty Company, also known as Glen Lakes Realty Company (Meadow Lakes), for work done on property located in East Lyme. New England Savings Bank brought an action to foreclose its construction mortgage against Meadow Lakes. Subsequently, the mortgage in question was assigned by the Federal Deposit Insurance Corporation to ALI, Inc. (bank), which was substituted as plaintiff in the first case, a defendant in the second case.[1] The actions were consolidated for trial. The trial court concluded that McDonald-Sharpe's mechanic's lien was invalid and discharged the lien. The trial court further found that the mechanic's lien did not have priority over the bank's mortgage.

McDonald-Sharpe appeals from the decision of the trial court, claiming that (1) the mechanic's lien was

---

[1] On October 10, 1996, this court granted the motion of ALI, Inc., to substitute National Loan Investors, Inc., as the appellee in place of ALI, Inc.

valid even though it was claimed against only a portion of the land in the subdivision for which the work was performed, (2) the trial court's finding that McDonald-Sharpe received consideration for the release of its mechanic's lien from the back portion of the property was erroneous in light of the evidence presented and the record as a whole, (3) the trial court improperly found that the mechanic's lien was not entitled to priority over the bank's mortgage, and (4) the trial court improperly found that McDonald-Sharpe was bound by the obligations under the note and mortgage signed by Angus McDonald in his capacity as general partner of Meadow Lakes. We agree with the trial court's conclusion that, because the lien was not claimed against all of the property for which work was performed, it was invalid. We therefore affirm the decision of the trial court.[2]

The facts underlying this appeal are as follows. In 1986, a general partnership known as Meadow Lakes Realty Company was formed for the purpose of owning and developing property in the town of East Lyme. McDonald is a partner in the partnership known as Meadow Lakes. He is also the president and principal stockholder of McDonald-Sharpe, a firm that does site planning and designs commercial projects. Gary Sharpe is the vice president and a stockholder of McDonald-Sharpe.

Meadow Lakes initially requested that McDonald-Sharpe do a feasibility study concerning the residential development of a certain tract of land situated in East Lyme. No written contract existed between McDonald-Sharpe and Meadow Lakes concerning the feasibility study. At the time of the initial request for the feasibility study, the subject property was owned by Locarno and

---

[2] In light of this conclusion, we do not address McDonald-Sharpe's remaining claims.

Romagna, Inc. (Locarno); Meadow Lakes did not hold title to any of the subject premises. McDonald-Sharpe commenced the feasibility study in June, 1986, prior to Meadow Lakes' taking title to the property. McDonald-Sharpe continued to work on the feasibility study until late in 1986, at which time it concluded that the project was, in fact, feasible.

On December 15, 1986, Meadow Lakes acquired the ninety-seven acre front portion of the property from Locarno. At the same time, Meadow Lakes acquired an option to purchase from Locarno the rear portion consisting of an additional 127.24 acres. The primary reason that Meadow Lakes purchased only the front parcel was that the rear parcel shared a border with a parcel owned by Valentine and Irene Kowalski, and Meadow Lakes did not want to take title to the rear parcel until the boundaries with the Kowalskis and other issues regarding the Kowalski parcel were resolved.[3] At all relevant times, the Kowalski parcel has been owned by the Kowalskis, and Meadow Lakes has had no interest in it.

McDonald-Sharpe performed work on the front and rear parcels throughout 1987. The front and rear parcels taken together contained several ponds that created planning and zoning considerations. All of the bills and statements rendered by McDonald-Sharpe during the first two years of their being involved in the site development were paid in full.

On March 31, 1988, the bank provided Meadow Lakes with a construction mortgage in the amount of $400,000, which covered the front parcel only. At the time of the mortgage, McDonald-Sharpe had been paid in full for all of its work. The mortgage deed and note contained language to the effect that the signatories would keep

[3] In addition to the boundary dispute, a second access to the project was sought over the Kowalski property.

the premises free and clear of liens and encumbrances. McDonald, as a partner in Meadow Lakes, was one of the signatories to the mortgage and note. Some of the proceeds of the bank loan were paid to McDonald-Sharpe for services rendered.

In May, 1988, after the mortgage was recorded, Meadow Lakes instructed McDonald-Sharpe to commence work on the Kowalski property. This became one of the principal activities of McDonald-Sharpe for the next year.

On January 31, 1990, Meadow Lakes purchased the rear parcel from Locarno. The purchase of the rear parcel was financed by a purchase money mortgage in favor of Locarno. Thereafter, McDonald-Sharpe continued to perform work on both the front and rear parcels until late in 1990.

In October, 1990, McDonald-Sharpe filed and served its mechanic's lien on the East Lyme land records, claiming a balance due of $125,554.36. The lien, purporting to be for materials furnished and services rendered "in the subdivision, site development and improvement of a certain parcel of land," covered the front and rear parcels, and included metes and bounds descriptions of each. The amount of the lien represented the aggregate amount for work performed on the front parcel, the rear parcel and the Kowalski parcel and was in addition to approximately $137,000 that McDonald-Sharpe had already been paid for its work. Despite the fact that much of the work claimed under the lien was performed on the Kowalski property, no lien was placed on the Kowalski property. No attempt was made to allocate the work among the different parcels.[4]

---

[4] McDonald testified at trial that it is not presently possible to make such an allocation with reasonable certainty.

In 1991, Locarno brought an action against Meadow Lakes to foreclose its purchase money mortgage on the rear parcel. McDonald-Sharpe was listed as a defendant in that action. McDonald-Sharpe issued a release of its mechanic's lien with respect to the rear parcel only.[5]

On October 8, 1991, the bank brought an action to foreclose its $400,000 mortgage on the front parcel and on October 9, 1991, McDonald-Sharpe commenced an action to foreclose its mechanic's lien. The actions were consolidated and tried to the court. The trial court found, inter alia, that the mechanic's lien was invalid because it was claimed against only one of three parcels of land on which work was performed. Even if the mechanic's lien was valid, the trial court further found that it was not entitled to priority over the bank's mortgage because much of the work represented by the mechanic's lien was for a separate and distinct contract formed after the date of the bank's mortgage. On that basis, the trial court ordered the mechanic's lien discharged. The trial court further held that the bank's $400,000 construction mortgage was a valid first mortgage subject only to taxes owed to the town. McDonald-Sharpe appealed from that decision.

McDonald-Sharpe argues that its mechanic's lien is valid even though it was claimed against only the remaining portion of the land in the subdivision for which the work was performed. According to McDonald-Sharpe, the lien properly described the premises on which the work was performed pursuant to General Statutes § 49-34.[6] McDonald-Sharpe argues that its lien

---

[5] The parties dispute whether McDonald-Sharpe was paid any consideration in exchange for the release of its mechanic's lien on the rear parcel.

[6] General Statutes § 49-34 provides in pertinent part: "A mechanic's lien is not valid, unless the person performing the services or furnishing the materials, (1) . . . lodges with the town clerk of the town in which the . . . plot of land is situated a certificate in writing . . . (A) describing the premises . . . ."

described both the front and rear parcels, and that both parcels comprised the 225 acre "plot of land" that was being developed into the subdivision. McDonald-Sharpe also argues that it performed the survey and design work on the Kowalski property to resolve a boundary dispute and access problem, and that the work performed on the Kowalski property was for the benefit of the entire subdivision. The bank argues in response that the mechanic's lien is invalid in that it attempts, by way of a single lien, to lien two distinct premises for services rendered on three separately owned properties.

Before addressing the merits of this issue, we note that "[a]ppellate review of findings of fact is limited to deciding whether such findings were clearly erroneous. . . . *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996). A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached." (Citation omitted; internal quotation marks omitted.) *D'Angelo* v. *McGoldrick*, 239 Conn. 356, 363–64, 685 A.2d 319 (1996).

The trial court held that the mechanic's lien was "invalid because it is claimed against only one of three parcels of land on which the work was performed. There is no dispute that McDonald-Sharpe performed work on three distinct parcels of land: the front parcel, the rear parcel and the Kowalski parcel. This work was performed from June 24, 1986, to the date of the mechanic's lien in September, 1990. At no time during this period was there unity of ownership of the three

parcels."[7] Although McDonald-Sharpe argues that the front and rear parcels taken together comprise the "plot of land" subject to the mechanic's lien, such a conclusion contravenes the finding reached by the trial court that "[t]he mechanic's lien represents a claim for services rendered on *three distinct plots of land*. Only one of the *three plots* is the subject of this action." (Emphasis added.) On the basis of the record before us, we agree with the trial court's conclusion that McDonald-Sharpe performed work on three distinct plots of land.

The trial court further found that the $125,554.36 claimed in the lien did not represent work performed on the front parcel alone; rather, it represented work performed on the front parcel, the rear parcel and the Kowalski parcel. We conclude that McDonald-Sharpe's mechanic's lien may not be enforced against only one of the three parcels of land on which the work was performed. To hold otherwise would be contrary to our holding in *Butch* v. *Thangamuthu*, 37 Conn. App. 547, 657 A.2d 684 (1995). In *Butch*, the plaintiff contractor performed services for an eighteen lot subdivision. After completing the work on the subdivision, the plaintiff filed a mechanic's lien on lot fourteen, which had been sold to the defendants, to collect the sum that remained outstanding on his contract to perform work for the entire subdivision. The plaintiff's liens against

---

[7] The trial court further utilized the following table to summarize the status of the ownership of the property at various times during the project:

| | Front Parcel | Rear Parcel | Kowalski Parcel |
|---|---|---|---|
| 6/24/86 - 12/14/86 | Locarno | Locarno | Kowalskis |
| 12/15/86 - 1/31/90 | Meadow Lakes | Locarno | Kowalskis |
| 1/31/90 - 7/22/91 | Meadow Lakes | Meadow Lakes | Kowalskis |
| 7/22/91 - Present | Meadow Lakes | Locarno | Kowalskis |

the other lots in the subdivision were extinguished by the foreclosure of the first mortgage on the subdivision. In the plaintiff's action to foreclose the mechanic's lien against lot fourteen, the plaintiff declined to offer any evidence regarding the value of the services rendered and materials furnished for the benefit of lot fourteen, and the trial court therefore rendered judgment for the defendants. Id., 547–49

On appeal, we upheld the decision of the trial court, noting that "[n]owhere does the statute suggest that a single lot of land in a subdivided plot is subject to the payment of a claim for services rendered or materials furnished in the site development or subdivision of the entire plot. Instead, the statute unambiguously indicates that the subdivided plot of land is the property to which a mechanic's lien must be attached when the plaintiff seeks to secure payment for materials and services provided to improve the plot being subdivided." Id., 549–50.

We further stated in *Butch* v. *Thangamuthu*, supra, 37 Conn. App. 550, that "[u]nder the language of § 49-33 (a), the plaintiff had a choice of filing a blanket lien against the plot of land that had been subdivided, or filing liens against the individual lots to secure sums due for improvements to each lot. When the plaintiff chose to proceed against individual lots, he limited himself to claiming in each lien an amount commensurate with the materials furnished and services rendered to improve each individual lot."

As in *Butch*, when McDonald-Sharpe chose to proceed against the front parcel only, it limited itself to claiming an amount commensurate with the materials furnished and services rendered to improve the front parcel. As the trial court found, however, no attempt was made to allocate the work among the different parcels and it is not presently possible to make such

an allocation with reasonable certainty. This is fatal to McDonald-Sharpe's lien.[8]

The judgments are affirmed.

In this opinion the other judges concurred.

---

[8] In light of this conclusion, we do not reach McDonald-Sharpe's claim that the trial court improperly found that its mechanic's lien was not entitled to priority over the bank's mortgage. We note, however, that the evidence in the record supports the trial court's conclusion that much of the work performed by McDonald-Sharpe was done pursuant to a separate contract formed after the date of the bank's mortgage.