# NEW ENGLAND SAVINGS BANK *v.* MEADOW LAKES REALTY COMPANY ET AL.

# ANGUS MCDONALD-GARY SHARPE AND ASSOCIATES, INC. *v.* GLEN LAKES REALTY COMPANY ET AL.
## (SC 15651)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued November 5, 1997—officially released February 3, 1998

*John S. Bennet,* with whom was *Lorri A. Massa,* for the appellant (Angus McDonald-Gary Sharpe and Associates, Inc.).

*Michael D. Colonese,* with whom was *Jeffrey F. Buebendorf,* for the appellee (National Loan Investors, Inc.).

*Opinion*

KATZ, J. This certified appeal concerns the validity of a blanket mechanic's lien filed on two separately acquired parcels of land for engineering and surveying work performed on those parcels and on an adjacent parcel that was owned by a third party and that was not liened. Angus McDonald-Gary Sharpe and Associates, Inc. (McDonald-Sharpe), brought an action to foreclose a mechanic's lien filed pursuant to General Statutes § 49-33,[1] against Meadow Lakes Realty Company, also known as Glen Lakes Realty Company

---

[1] General Statutes § 49-33 provides in pertinent part: "Mechanic's lien. Precedence. Rights of subcontractors. (a) If any person has a claim for

(Meadow Lakes). Although the lien was for work performed on three parcels of land located in East Lyme, it covered only two of the parcels. New England Savings Bank brought an action against Meadow Lakes to foreclose its construction mortgage, which covered only one of the two liened parcels. That mortgage was later assigned by the Federal Deposit Insurance Corporation to ALI, Inc., which was then substituted as the plaintiff in the first case, and as a defendant in the second case. National Loan Investors, Inc. (National), was thereafter substituted as appellee in place of ALI, Inc.

These foreclosure actions were consolidated for trial. The trial court concluded that the mechanic's lien was invalid and discharged it. The court further concluded that National's mortgage was a valid first mortgage, subject only to taxes owed to the town of East Lyme, and rendered judgment accordingly. McDonald-Sharpe appealed to the Appellate Court, which affirmed the trial court's judgment. *New England Savings Bank* v. *Meadow Lakes Realty Co.*, 44 Conn. App. 240, 249, 688 A.2d 345 (1997). Thereafter, this court granted McDonald-Sharpe's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that the plaintiff's mechanic's lien was invalid?" *New England Savings Bank* v. *Meadow Lakes Realty Co.*, 240 Conn. 918, 692 A.2d 814 (1997).

more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim. . . ."

The Appellate Court decision sets forth the facts pertinent to this appeal. "In 1986, a general partnership known as Meadow Lakes Realty Company was formed for the purpose of owning and developing property in the town of East Lyme. [Angus] McDonald is a partner in the partnership known as Meadow Lakes. He is also the president and principal stockholder of McDonald-Sharpe, a firm that does site planning and designs commercial projects. Gary Sharpe is the vice president and a stockholder of McDonald-Sharpe.

"Meadow Lakes initially requested that McDonald-Sharpe do a feasibility study concerning the residential development of a certain tract of land situated in East Lyme. No written contract existed between McDonald-Sharpe and Meadow Lakes concerning the feasibility study.[2] At the time of the initial request for the feasibility study, the subject property was owned by Locarno and Romagna, Inc. (Locarno); Meadow Lakes did not hold title to any of the subject premises. McDonald-Sharpe commenced the feasibility study in June, 1986, prior to Meadow Lakes' taking title to the property. McDonald-Sharpe continued to work on the feasibility study until late in 1986, at which time it concluded that the project was, in fact, feasible.

"On December 15, 1986, Meadow Lakes acquired the ninety-seven acre front portion of the property from Locarno. At the same time, Meadow Lakes acquired an option to purchase from Locarno the rear portion consisting of an additional 127.24 acres. The primary reason that Meadow Lakes purchased only the front parcel was that the rear parcel shared a border with a parcel owned by Valentine and Irene Kowalski, and Meadow Lakes did not want to take title to the rear parcel until the boundaries with the Kowalskis and

---

[2] As part of this feasibility study, McDonald-Sharpe prepared a perimeter survey of both of the parcels covered by the mechanic's lien.

other issues regarding the Kowalski parcel were resolved.[3] At all relevant times, the Kowalski parcel has been owned by the Kowalskis, and Meadow Lakes has had no interest in it.

"McDonald-Sharpe performed work on the front and rear parcels throughout 1987. The front and rear parcels taken together contained several ponds that created planning and zoning considerations. All of the bills and statements rendered by McDonald-Sharpe during the first two years of their being involved in the site development were paid in full.

"On March 31, 1988, [National] provided Meadow Lakes with a construction mortgage in the amount of $400,000, which covered the front parcel only. At the time of the mortgage, McDonald-Sharpe had been paid in full for all of its work. The mortgage deed and note contained language to the effect that the signatories would keep the premises free and clear of liens and encumbrances. McDonald, as a partner in Meadow Lakes, was one of the signatories to the mortgage and note. Some of the proceeds of the [National] loan were paid to McDonald-Sharpe for services rendered.

"In May, 1988, after the mortgage was recorded, Meadow Lakes instructed McDonald-Sharpe to commence work on the Kowalski property. This became one of the principal activities of McDonald-Sharpe for the next year.

"On January 31, 1990, Meadow Lakes purchased the rear parcel from Locarno. The purchase of the rear parcel was financed by a purchase money mortgage in favor of Locarno. Thereafter, McDonald-Sharpe continued to perform work on both the front and rear parcels until late in 1990.

---

[3] "In addition to the boundary dispute, a second access to the project was sought over the Kowalski property." *New England Savings Bank* v. *Meadow Lakes Realty Co.*, supra, 44 Conn. App. 243 n.3.

"In October, 1990, McDonald-Sharpe filed and served its mechanic's lien on the East Lyme land records, claiming a balance due of $125,554.36. The lien, purporting to be for materials furnished and services rendered 'in the subdivision, site development and improvement of a certain parcel of land,' covered the front and rear parcels, and included metes and bounds descriptions of each. The amount of the lien represented the aggregate amount for work performed on the front parcel, the rear parcel and the Kowalski parcel and was in addition to approximately $137,000 that McDonald-Sharpe had already been paid for its work. Despite the fact that much of the work claimed under the lien was performed on the Kowalski property, no lien was placed on the Kowalski property. No attempt was made to allocate the work among the different parcels.[4]

"In 1991, Locarno brought an action against Meadow Lakes to foreclose its purchase money mortgage on the rear parcel. McDonald-Sharpe was listed as a defendant in that action. McDonald-Sharpe issued a release of its mechanic's lien with respect to the rear parcel only.[5]

"On October 8, 1991, [National] brought an action to foreclose its $400,000 mortgage on the front parcel and on October 9, 1991, McDonald-Sharpe commenced an action to foreclose its mechanic's lien. The actions were consolidated and tried to the court. The trial court found, inter alia, that the mechanic's lien was invalid because it was claimed against only one of three parcels of land on which work was performed. Even if the

---

[4] "McDonald testified at trial that it [was] not presently possible to make such an allocation with reasonable certainty." *New England Savings Bank* v. *Meadow Lakes Realty Co.*, supra, 44 Conn. App. 244 n.4.

[5] "The parties dispute whether McDonald-Sharpe was paid any consideration in exchange for the release of its mechanic's lien, on the rear parcel." *New England Savings Bank* v. *Meadow Lakes Realty Co.*, supra, 44 Conn. App. 245 n.5.

mechanic's lien was valid, the trial court further found that it was not entitled to priority over [National's] mortgage because much of the work represented by the mechanic's lien was for a separate and distinct contract formed after the date of [National's] mortgage. On that basis, the trial court ordered the mechanic's lien discharged. The trial court further held that [National's] $400,000 construction mortgage was a valid first mortgage subject only to taxes owed to the town. McDonald-Sharpe appealed from that decision." *New England Savings Bank* v. *Meadow Lakes Realty Co.*, supra, 44 Conn. App. 242–45.

In its appeal to the Appellate Court, "McDonald-Sharpe argue[d] that its mechanic's lien is valid even though it was claimed against only the remaining portion of the land in the subdivision for which the work was performed. According to McDonald-Sharpe, the lien properly described the premises on which the work was performed pursuant to General Statutes § 49-34. McDonald-Sharpe argue[d] that its lien described both the front and rear parcels, and that both parcels comprised the 225 acre 'plot of land' that was being developed into the subdivision. McDonald-Sharpe also argue[d] that it performed the survey and design work on the Kowalski property to resolve a boundary dispute and access problem, and that the work performed on the Kowalski property was for the benefit of the entire subdivision. [National] argue[d] in response that the mechanic's lien is invalid in that it attempts, by way of a single lien, to lien two distinct premises for services rendered on three separately owned properties." Id., 245–46.[6]

---

[6] "McDonald-Sharpe appeal[ed] from the decision of the trial court, claiming that (1) the mechanic's lien was valid even though it was claimed against only a portion of the land in the subdivision for which the work was performed, (2) the trial court's finding that McDonald-Sharpe received consideration for the release of its mechanic's lien from the back portion of the property was erroneous in light of the evidence presented and the record

The Appellate Court focused first on the trial court's essential findings, specifically that: (1) the work had been performed on three distinct parcels of land; (2) during the time the work was performed, there had been no unity of ownership of the three parcels; (3) the lien is claimed against only one of the three parcels on which the work had been performed; and (4) the $125,554.36 claimed in the lien represented the work performed on the front parcel, the rear parcel and the Kowalski parcel, rather than on the front parcel alone. The Appellate Court concluded that these findings were not clearly erroneous. Id., 246–47. Therefore, relying on its holding in *Butch* v. *Thangamuthu*, 37 Conn. App. 547, 657 A.2d 684 (1995), and on the facts found by the trial court, the Appellate Court concluded that McDonald-Sharpe's mechanic's lien, which did not claim an amount commensurate with the materials furnished and services rendered to improve the front parcel, but, rather, included an amount for work on the other two parcels, could not be enforced against only the front parcel. *New England Savings Bank* v. *Meadow Lakes Realty Co.*, supra, 44 Conn. App. 247. "[W]hen McDonald-Sharpe chose to proceed against the front parcel only, it limited itself to claiming an amount commensurate with the materials furnished and services rendered to improve the front parcel." Id., 248. Its inability to allocate the work among the different parcels was "fatal to McDonald-Sharpe's lien." Id., 249. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id.

as a whole, (3) the trial court improperly found that the mechanic's lien was not entitled to priority over the bank's mortgage, and (4) the trial court improperly found that McDonald-Sharpe was bound by the obligations under the note and mortgage signed by Angus McDonald in his capacity as general partner of Meadow Lakes." *New England Savings Bank* v. *Meadow Lakes Realty Co.*, supra, 44 Conn. App. 241–42. The Appellate Court agreed with the trial court's conclusion that, because the lien was not claimed against all of the property for which work was performed, it was invalid and, therefore, did not address the remaining claims.

McDonald-Sharpe asks that we reject the Appellate Court decision that its lien was invalid, and conclude that it had properly filed a blanket lien on the entire 225 acre property for the services it had rendered to benefit the entire subdivision. Essentially, it makes four arguments in support of its claim. First, because the land had been divided into two parcels for conveyance purposes only, namely in order to allow time to resolve the boundary issues with the Kowalskis and to develop the second access through the Kowalski property, McDonald-Sharpe argues that the front and rear parcels on which work had been performed constituted a 225 acre "plot of land" within the meaning of § 49-33. Second, because the Kowalski property was not part of the "plot of land" being subdivided, McDonald-Sharpe did not need to claim a lien against it. Although off-site work on the Kowalski property had been performed, that work had been for the benefit of the entire project, and had, therefore, been "rendered in the . . . site development or subdivision of [the] plot of land" within the meaning of § 49-33.[7] Third, McDonald-Sharpe argues that its release of the lien on the rear parcel had no effect on its ability to enforce the lien against the remaining subdivision property. Fourth, there is no requirement in the statute for an allocation by the lienor of the amount of services provided to specific lots when the

[7] With regard to the Kowalski property, McDonald-Sharpe also challenged the Appellate Court's reliance on the trial court's conclusion that the work on the Kowalski property had been performed pursuant to a separate contract made after the date of National's mortgage. Even if we assume that there had been a second contract, McDonald-Sharpe argues that both contracts, nevertheless, had been carried out in a continuous and overlapping fashion for the same purpose of obtaining final subdivision approval and for the benefit of the entire subdivision project. Under this view of the evidence, because the work on the Kowalski property had been incidental to the project, and had been performed for the benefit of the subdivision project, that work did not constitute separate contracts that would otherwise require separate liens. Because we conclude that the lien is invalid because it purports to cover work performed on after-acquired property, we need not address this issue.

services have been provided for the benefit of the entire development and the lien is for the "plot of land."[8]

In response, National argues that the lien is not valid because: (1) the services performed by engineers and land surveyors do not fall within the ambit of § 49-33; (2) the value of the work performed on the Kowalski parcel cannot be included in a lien on the front parcel, regardless of whether the work was merely incidental to and for the benefit of the subdivision;[9] (3) the trial court's finding that the lien covered two distinct parcels of land was not clearly erroneous; and (4) even if services had been rendered to a single "plot of land," McDonald-Sharpe improperly failed to allocate the amount attributable to the front parcel.[10] We disagree with National's claim that engineers and land surveyors do not fall within § 49-33. We nevertheless conclude that the lien is invalid because it purports to cover services rendered before Meadow Lakes acquired title to either the front or rear parcels. We therefore affirm, although on different grounds, the judgment of the Appellate Court.

[8] There are other arguments by McDonald-Sharpe regarding the claimed priority of the lien that have been made but that play no role in the outcome of this appeal. McDonald-Sharpe argues that because it had acquired an option to purchase the rear parcel at the time it took title to the front parcel, it had unity of title to the entire 225 acres, allowing its lien to relate back to the date of the option, a time prior to the recording of the mortgage held by National, and thereby affording it priority. McDonald-Sharpe also contends that the trial court improperly concluded that, because it had been paid in full at the time National's mortgage was recorded, its lien did not relate back to the commencement of the provision of services.

[9] National also argues that the work performed on the Kowalski property was more than merely incidental, but this argument does not depend on the characterization of the work involved.

[10] National also argues that even if the lien is valid, it does not have priority over National's mortgage because of equitable considerations and because the work had been performed pursuant to several and distinct contracts that had been formed after the date of National's mortgage. Because we conclude that the lien was invalid, we do not address arguments relating to the issue of priority.

## I

We begin with § 49-33, the interpretation of which is an issue of law. See generally *Camputaro* v. *Stuart Hardwood Corp.*, 180 Conn. 545, 549–54, 429 A.2d 796 (1980). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. Under our rules of statutory construction, we are guided by the words of the statute itself, the legislative history and circumstances surrounding its enactment, the legislative policy the statute was designed to implement, and its relationship to existing legislation and common-law principles governing the same subject matter. *State* v. *Ledbetter*, 240 Conn. 317, 327–28, 692 A.2d 713 (1997).

"The guidelines for interpreting mechanic's lien legislation are [equally] well established. Although the mechanic's lien statute creates a statutory right in derogation of the common law; *Camputaro* v. *Stuart Hardwood Corporation*, [supra, 180 Conn. 550]; *Gruss* v. *Miskinis*, 130 Conn. 367, 370, 34 A.2d 600 (1943); its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. *H & S Torrington Associates* v. *Lutz Engineering Co.*, 185 Conn. 549, 553, 441 A.2d 171 (1981); *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.*, 183 Conn. 108, 115, 438 A.2d 834 (1981).[11] Our interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction. *Camputaro* v. *Stuart Hardwood Corporation*, supra, 551; *Stone* v. *Rosenfield*, 141 Conn. 188, 191, 104

---

[11] Some of our early cases stated that the mechanic's lien statute should be construed with "reasonable strictness." See, e.g., *Lindsay* v. *Gunning*, 59 Conn. 296, 318–19, 22 A. 310 (1890); *Chapin* v. *Persse & Brooks Paper Works*, 30 Conn. 461, 474 (1862). It was not, however, to be so strictly construed as to render the lien valueless to the lienor. See, e.g., *Lindsay* v. *Gunning*, supra, 320; *Bank of Charleston* v. *Curtiss*, 18 Conn. 342, 347 (1847).

A.2d 545 (1954). Finally, the provisions of our statute differ sufficiently from the mechanic's lien legislation of other states so that precedents elsewhere are of limited utility in the interpretation of our [statute]. *Camputaro* v. *Stuart Hardwood Corporation*, supra [555]; *New Haven Orphan Asylum* v. *Haggerty Co.*, 108 Conn. 232, 236, 142 A. 847 (1928). . . . *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, 217 Conn. 361, 364–65, 585 A.2d 1210 (1991)." (Internal quotation marks omitted.) *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, 241 Conn. 370, 375–76, 696 A.2d 326 (1997).

Against this background, we first must decide whether § 49-33 permits a lien to be filed by engineers or land surveyors. Persons entitled to claim a mechanic's lien pursuant to § 49-33 (a) are those who have provided "services" or "materials" in connection with "the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land . . . ." Prior to 1974, "[o]ur cases construing the language of [§ 49-33] . . . required, as a condition of lienability, that the work done be incorporated in or utilized in the building (or the appurtenance) to be constructed, raised, removed or repaired. . . . Our other cases . . . consistently . . . insisted that mechanic's lien work be wrought into the liened property in some fashion. Thus the installation of fixtures that do not become part of the realty; *Hartlin* v. *Cody*, 144 Conn. 499, 506, 134 A.2d 245 (1957); or of electrical work that is not permanently attached to the realty; *Stone* v. *Rosenfield*, [supra, 141 Conn. 192]; *Abbadessa* v. *Puglisi*, 101 Conn. 1, 124 A. 838 (1924); the removal of pipe from one building that is not incorporated into the building that is its replacement; *Hillhouse* v. *Duca*, 101 Conn. 92, 101, 125 A. 367 (1924); and the furnishing of materials or equipment that is not shown to have gone into the construction or repair of a building;

*Lewin & Sons, Inc.* v. *Herman,* 143 Conn. 146, 150, 120 A.2d 423 (1956); *Chapin* v. *Persse & Brooks Paper Works,* 30 Conn. 461, 473 (1862); *Rose* v. *Persse & Brooks Paper Works,* 29 Conn. 256, 267–68 (1860); [were] all unlienable." (Citations omitted; internal quotation marks omitted.) *Camputaro* v. *Stuart Hardwood Corp.,* supra, 180 Conn. 552–53.

When, in 1974, the legislature amended § 49-33, it extended the reach of a mechanic's lien to encompass claims for "materials furnished or services rendered in the . . . improvement of any lot or in the site development or subdivision of any plot of land . . . ." Public Acts 1974, No. 74-310, § 1. The limitation of the statute to work that was incorporated or utilized in a building or appurtenance was thereby eliminated and the amendment "extended the coverage of § 49-33 to two distinct types of services: (1) services rendered in the improvement of any lot; and (2) services rendered in the site development or subdivision of any plot of land." *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.,* supra, 217 Conn. 366. "[T]he phrase 'improvement of any lot' was intended to include the same types of services embraced by the phrase 'site development or subdivision of any plot of land.' The only distinction intended by the legislature was between services benefiting particular lots and those benefiting the subdivision as a whole." Id., 367.

In *Nickel Mine Brook Associates,* this court discussed the types of services the legislature intended to include when it used the terms "improvement," "site development" and "subdivision." Id. The court recognized that the legislative history indicated that an engineer or surveyor could claim a lien under certain circumstances. "[R]eferences therein to surveyors and engineers who draft subdivision plans provide some evidence of the types of services that might be embraced by the amend-

ment." Id., 369. The court declined, however, to decide what those circumstances were because, "[g]iven the distinct difference between the nature of services provided by lawyers, on the one hand, and surveyors and engineers on the other, [the court] conclude[d] that the 1974 amendment was not intended to allow the filing of mechanic's liens by attorneys providing assistance in zoning and other matters related to real estate." Id., 370. Because it was clear that services by lawyers were not included within § 49-33, the court also declined to address the plaintiff's claim that only those services that physically enhance the property or that lay the groundwork for physical enhancement may be the subject of a mechanic's lien. Id., 369 n.9. Then, in *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, supra, 241 Conn. 380, we expressly decided that § 49-33 does not extend to services not *directly associated with the physical construction or improvement of the land.*

In the present case, McDonald-Sharpe performed surveying and engineering work in the site development and subdivision of the plot of land.[12] It prepared the site testing, layout and road designs, and presented those plans to the town for preliminary project approval. Additionally, McDonald-Sharpe designed the plans for a pond to alleviate drainage problems and designed and laid out the second access across the Kowalski property that was required by town regulations. McDonald-Sharpe encountered several problems relating to water drainage, access and boundary disputes, and had it not prepared the site testing, laid out the road designs, drafted the plans for a pond and developed a second access, it is unlikely that the subdivision project would have received the necessary town approvals. This case epitomizes the relationship between the physical enhancement test outlined in

[12] Whether we agree that the three parcels constituted a plot of land or three separate parcels is of no consequence to the resolution of this issue.

*Thompson & Peck, Inc.*, and the legislative history contemplating the eligibility of a surveyor and engineer filing a mechanic's lien. In short, McDonald-Sharpe laid the groundwork for the physical enhancement of the subdivision, which became an essential part of the scheme of physical improvement of the subdivision project. We, therefore, conclude that surveying and engineering services of the type provided by McDonald-Sharpe for the subdivision of land are lienable pursuant to § 49-33.

II

We next address the validity of a blanket mechanic's lien describing property acquired after the commencement of the services that are claimed in the lien. We conclude that the lien filed by McDonald-Sharpe is invalid because it purports to lien property for services rendered at the behest of Meadow Lakes prior to its acquisition of title to that property. Because we conclude that the lien was invalid, we need not address whether § 49-33 permits an unapportioned blanket lien on the front parcel for surveying work performed on the other two parcels, only one of which is described in the lien.

General Statutes § 49-34 (1) (A)[13] requires that the certificate of lien describe "the date of the commence-

---

[13] General Statutes § 49-34 provides: "Certificate of lien to be recorded and notice given to owner. A mechanic's lien is not valid, unless the person performing the services or furnishing the materials, (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land, (A) describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of the performance of services or furnishing of materials, (B) stating that the amount claimed is justly due, as nearly as the same can be ascertained, and (C) subscribed and sworn to by the claimant, and (2) within the same time, or prior to the lodging of the certificate but not later than thirty days after lodging the certificate, serves a true and attested copy

ment of the performance of services or furnishing of materials . . . ." A lien relates back, for purposes of establishing priority as against other claimants, to the date of commencement of services. General Statutes § 49-33 (b).[14] In addition to establishing priority, the purpose of the certificate is "to give reasonable notice to creditors and purchasers of the existence and extent of the lien." *Hartford Building & Loan Assn.* v. *Goldreyer,* 71 Conn. 95, 100, 41 A. 659 (1898). As such, the lienor is held to the date of commencement named in the lien. Id., 99 (lienor estopped from claiming date of commencement earlier than that named in certificate of lien); see also *Centerbrook, Architects & Planners* v. *Laurel Nursing Services, Inc.,* 224 Conn. 580, 583, 620 A.2d 127 (1993) (lien invalidated based on date of commencement in certificate of lien); cf. *Cole* v. *Uhl,* 46 Conn. 296, 299 (1878) (date of completion need not be accurately stated in lien as long as lien recorded within statutory limitation of actual completion date).[15]

The lien filed by McDonald-Sharpe provides that it "commenced to furnish materials and render services on the 24th day of June, 1986, and ceased furnishing such materials and rendering such services on the 9th day of September, 1990." The trial court found that, during that period, work was performed on the front

of the certificate upon the owner of the building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35."

[14] General Statutes § 49-33 (b) provides: "The claim is a lien on the land, building and appurtenances or lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then on the plot of land and the claim takes precedence over any other encumbrance originating after the commencement of the services, or the furnishing of any such materials, subject to apportionment as provided in section 49-36."

[15] We note, however, that a lien will not be invalidated because of innocent overstatements of the amount due; *Kiel* v. *Carll,* 51 Conn. 440, 441 (1883); or an honest mistake as to the quantity of land. *Tramonte* v. *Wilens,* 89 Conn. 520, 524, 94 A. 978 (1915).

parcel, the rear parcel and the Kowalski parcel.[16] Meadow Lakes was not the owner of either the front or the rear parcel when work commenced, and, in fact, did not acquire any interest in the property until it purchased the front parcel and acquired an option to purchase the rear parcel on December 15, 1986.[17]

Our cases clearly state that a lien is invalid unless the party requesting the work is the owner of the property or has an equitable interest in that property. As early as 1858, this court questioned whether the mechanic's lien statute would be enforceable if it were interpreted to permit a lien for work performed without the consent of the owner of the property. *Spaulding* v. *Thompson Ecclesiastical Society*, 27 Conn. 573, 577 (1858). The provision expressly "requiring the claim to be 'by virtue of an agreement with or by consent of the owner,' or his agent" was added to our mechanic's lien

---

[16] The trial court summarized the ownership of the three parcels as follows:

|  | Front Parcel | Rear Parcel | Kowalski Parcel |
|---|---|---|---|
| 6/24/86–12/14/86 | Locarno | Locarno | Kowalskis |
| 12/15/86–1/31/90 | Meadow Lakes | Locarno | Kowalskis |
| 1/31/90–7/22/91 | Meadow Lakes | Meadow Lakes | Kowalskis |
| 7/22/91–Present | Meadow Lakes | Locarno | Kowalskis |

[17] Because the commencement date of services named in the lien precedes the date on which both the front parcel and the option to purchase the rear parcel were acquired, we need not address the question of whether the option contract creates a sufficient interest to support a mechanic's lien. We note, however, that an option contract does not, by itself, create an obligation in the buyer to perform services upon the property as a condition of sale. It merely binds the vendor to keep his or her offer open for a stated time in exchange for certain consideration. *Patterson* v. *Farmington Street Railway Co.*, 76 Conn. 628, 642, 57 A. 853 (1904) (option contract concerns sale of power to withdraw offer but does not affect other "incidents to absolute ownership"). Nothing in the trial court's findings of fact or in the record suggests that this particular option contract bound Meadow Lakes to perform the work done by McDonald-Sharpe or that the failure to perform that work would absolve the seller of its obligations under the contract.

statute in 1875. Public Acts 1875, c. xv, § 1; see *Peck* v. *Brush*, 90 Conn. 651, 654, 98 A. 561 (1916) (noting that 1875 amendment was made in response to *Spaulding*); see also *Barlow Bros. Co.* v. *Gaffney*, 76 Conn. 107, 110, 55 A. 582 (1903) (outlining early history of mechanic's lien statutes).[18]

This court has stated that "[l]ienors are protected if they have a claim either (1) by virtue of an agreement with or the consent of the owner of the land, or (2) by the consent of some person having authority from or rightfully acting for such owner in procuring labor or materials."[19] *Seaman* v. *Climate Control Corp.*, 181 Conn. 592, 595, 436 A.2d 271 (1980). "The mere granting of permission for work to be conducted on one's property has never been deemed sufficient to support a mechanic's lien against the property. . . . We have also recognized long ago that a landowner does not subject his property to a mechanic's lien by simply allowing work to be done on it." (Citations omitted.) *Hall* v. *Peacock Fixture & Electric Co.*, 193 Conn. 290, 295, 475 A.2d 1100 (1984).

As a general rule, a lien on after-acquired property is, therefore, invalid. *Centerbrook, Architects & Planners* v. *Laurel Nursing Services, Inc.*, supra, 224 Conn.

[18] Historically, this principle has been applied to mechanic's liens in a variety of situations, not all of which pertain to the validity of a mechanic's lien on after-acquired property. See, e.g., *Hall* v. *Peacock Fixture & Electric Co.*, 193 Conn. 290, 291–92, 475 A.2d 1100 (1984) (mechanic's lien discharged when lessor of property gave permission for work to be done but did not promise to pay for it); *Bridgeport People's Savings Bank* v. *Palaia*, 115 Conn. 357, 362–63, 161 A. 526 (1932) (permission by seller of land for buyer to commence work before title passes insufficient to create equitable interest under mechanic's lien statute); *Avery* v. *Smith*, 96 Conn. 223, 226–28, 113 A. 313 (1921) (no lien on land where landowner did not contract for and was not obligated to pay for construction of building that was gift to landowner).

[19] McDonald-Sharpe has not argued that Meadow Lakes was the owner of the property when it was hired to perform surveying and engineering services, nor has it argued that Meadow Lakes was the owner at that time and that its authorized agent requested or consented to the work.

583–84. Certain equitable interests arising out of a contract for sale of land may, however, support a mechanic's lien on after-acquired property. See, e.g., *Hannan* v. *Handy*, 104 Conn. 653, 658, 134 A. 71 (1926) (equitable interest sufficient to give rise to mechanic's lien may arise when contract for sale provides title will not pass until completion of building on vendor's land); *Hillhouse* v. *Pratt*, 74 Conn. 113, 117, 49 A. 905 (1901) (contract for sale of land requiring vendee to commence construction of house prior to passage of title creates sufficient equitable interest in vendee to permit mechanic's lien on property). "Where . . . the terms of the contract of purchase contain a direction to the vendee to construct a building upon the premises, those who perform labor or furnish materials in order to enable the vendee to carry out that undertaking have a right of lien which will take precedence over even a purchase price mortgage." *Seipold* v. *Gibbud*, 110 Conn. 392, 396, 148 A. 328 (1930) (extending equitable interest to partial performance of oral contract for sale). "One who renders services or furnishes materials in the erection of a building on land which stands of record in the name of one, other than the person who procures the work to be done, is put upon notice, and if he fails to ascertain what rights the procuring party has in the land, he proceeds at his own risk so far as any claim for the payment of his bill out of the land is concerned." *Bridgeport People's Savings Bank* v. *Palaia*, 115 Conn. 357, 363, 161 A. 526 (1932).

In *Centerbrook, Architects & Planners* v. *Laurel Nursing Services, Inc.*, supra, 224 Conn. 580, we determined that certain architectural and engineering services were not lienable under § 49-33 because the landowner had neither title to nor an equitable interest in the land at the time the work commenced. In that case, the lienor began performing work pursuant to an agreement with the buyer of a parcel of land after a

written contract for sale had been entered into but before title actually passed and continued performing services after title had passed. Id., 582–83. Although the contract provided that the offer was subject to the buyer's ability to obtain certain permits and approvals, the court determined that such a provision created no equitable interest in the buyer prior to the transfer of title and that the lien was, therefore, invalid. Id., 590. "[I]n order for the buyer under a contract of purchase of real estate to have a sufficient equitable interest in the property to support a mechanic's lien in favor of the buyer's supplier of materials, the provision in the contract providing for the work on the property must be in some sense for the interest or at the behest of the seller of the property. The provision must require, as a condition of the seller's obligations under the contract, that the buyer perform the work at issue. The rationale underlying this principle is that the buyer under those circumstances is improving the land, not only for the buyer's own benefit, but also for the benefit of the record owner. That rationale is what supports the conclusion that the seller has transferred to the buyer, before the buyer takes title to the property, an equitable interest in the property sufficient to support a mechanic's lien, in favor of the buyer's supplier of materials, that attaches to the estate of the buyer after the buyer takes title thereto." Id., 588–89.[20]

---

[20] Early cases addressing the question of after-acquired property dealt with the issue in terms of the priority rather than the validity of the lien. See, e.g., *Bridgeport People's Savings Bank* v. *Palaia,* supra, 115 Conn. 363–64; *Seipold* v. *Gibbud,* supra, 110 Conn. 396; *Hillhouse* v. *Pratt,* supra, 74 Conn. 120. In *Centerbrook, Architects & Planners* v. *Laurel Nursing Services, Inc.,* supra, 224 Conn. 592, however, we upheld the trial court's decision invalidating a lien on after-acquired property where the commencement date in the lien preceded transfer of title to the buyer. The trial court in the present case, in fact, noted that McDonald-Sharpe's lien cannot relate back to June, 24, 1986, because our decision in *Centerbrook, Architects & Planners* forbids it.

We note that § 49-33 (b) explicitly provides that a lien has precedence over claims arising after the date of commencement of services. There is

Because *Centerbrook, Architects & Planners* did not concern a subdivision, initially we must decide whether such an ownership interest is also a prerequisite to a valid lien for work done in the development or subdivision of a plot of land. In 1974, § 49-33 was amended to allow a mechanic's lien for "services rendered in the . . . site development or subdivision of any plot of land . . . ." Public Acts 1974, No. 74-310, § 1. Nothing in the text of the amendment provides us with any direction on this issue and the legislative history is scarcely more helpful. The legislative history does make it clear that until "such time as they legally became constituted individual lots," an engineer "has the right to lien the entire plot." 17 H.R. Proc., Pt. 10, 1974 Sess., p. 4979, remarks of Representative Hoyte G. Brown, Jr. Further, a blanket lien against the subdivision is permissible even though the land is never subdivided, developed or sold. See id., p. 4978, remarks of Representatives Brown and Thomas M. Kablik. Although those remarks indicate that the right to a blanket lien for surveying and engineering services ends when the lot is subdivided, they are silent as to when such a right begins. Moreover, none of those statements are directed to the question of whether the amendment has altered the existing law relating to after-acquired property.

We have in the past "acknowledge[d] the realities of the manner in which the construction world operates" in interpreting § 49-33. *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, supra, 241 Conn. 381. Although we recognize that practical considerations inherent in real estate development may necessitate commencing surveying and engineering services prior to the acquisition

nothing in the text of the statute to indicate that a court is free to choose a different priority date or to otherwise reform the lien in accordance with existing law. While innocent clerical errors or misstatements that do not prejudice the opposing party are not necessarily fatal to a lien; see footnote 15 of this opinion; McDonald-Sharpe has not argued that the June 24, 1986 date was an error, clerical or otherwise.

of the property, we cannot presume from the sparse legislative history that the amendment abrogated the long-standing requirement that the contracting property owner hold title to or have an equitable interest in the land at the time the work commenced. "[T]here is a presumption that an amendatory act does not change the existing law further than is expressly declared or necessarily implied." *Seaman* v. *Climate Control Corp.*, supra, 181 Conn. 603. We therefore conclude that, unless and until the legislature amends or otherwise clarifies the language of § 49-33, our decision in *Centerbrook, Architects & Planners* applies to "the site development or subdivision of [a] plot of land . . . ." General Statutes § 49-33 (a).

Meadow Lakes did not acquire any interest in the property at issue in this case until December 15, 1986. Meadow Lakes, therefore, was not the owner of either parcel when it contracted with McDonald-Sharpe or when the work commenced on June 24, 1986. The trial court specifically found that "the $125,554.36 claimed in the mechanic's lien represents work performed on the front parcel, the rear parcel, and the Kowalski parcel" during the period stated in the lien. The trial court also found that no written contract existed between Meadow Lakes and McDonald-Sharpe and that Locarno did not consent to the work that was performed. Even if Locarno had given permission for McDonald-Sharpe to begin work or simply was aware of and acquiesced to it, this would not constitute sufficient consent to support the lien. *Centerbrook, Architects & Planners* v. *Laurel Nursing Services, Inc.*, supra, 224 Conn. 591; *Hall* v. *Peacock Fixture & Electric Co.*, supra, 193 Conn. 295. Significantly, the trial court made no finding that there had been a contract for sale, similar to those in *Hillhouse* v. *Pratt*, supra, 74 Conn. 114, or *Seipold* v. *Gibbud*, supra, 110 Conn. 393, between Meadow Lakes

and Locarno requiring Meadow Lakes to survey or sub-divide the property prior to the transfer of title and McDonald-Sharpe does not argue that such a contract existed. It is, therefore, clear that McDonald-Sharpe's claim for a lien for services performed on after-acquired property is improper and that, consequently, the lien is invalid.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.