[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CITY OF DANBURY'S MOTION FOR SUMMARY JUDGMENT
The City of Danbury has moved for summary judgment on the claims of Connecticut Concrete Construction, Inc. ("Conn. Concrete") and nine defendants who have brought cross complaints to foreclose mechanics liens on the property in Danbury where an ice rink was being constructed by ARC IceSports Danbury, Inc. ("ARC") pursuant to a contract with the City of Danbury ("City"). The City claims that all of the mechanics liens that were filed when the property was owned by ARC were extinguished when the City reclaimed title on June 6, 2000, pursuant to a reverter clause in its contract with ARC.
In addition to Conn. Concrete, the following lienors have asserted cross claims in this case for foreclosure of the mechanics liens they filed, alleging that they had furnished goods and materials for the construction of the ice rink: Erection Welding Contractors, LLC; Kramer Iron Inc., Connecticut Metal Siding, LLC, L.V. Construction Co., LLC, Capital Drywall Construction, Inc., HFP Sprinkler of Hazardville, Inc., Pavarini Construction Co., Lombardo Bros. Mason Contractors, Inc., and Precision Carpentry of Westchester, Inc. All of their liens were filed before June 6, 2000, at times when ARC was the record owner of the property.
Standard of review
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49 (formerly § 384). Sherwood v. Danbury Hospital, 252 Conn. 193, 201 (2000); Alvarezv. New Haven Register, Inc., 249 Conn. 709, 714 (1999); Rivera v. DoubleA Transportation, Inc., 248 Conn. 21, 24 (1999); Nichols v. LighthouseCT Page 2174Restaurant, Inc., 246 Conn. 156, 163 (1998); Peerless Ins. Co. v.Gonzalez, 241 Conn. 476, 481.
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v. Double A Transportation, Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St. Vincent's MedicalCenter, 252 Conn. 363, 373 n. 7 (2000).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500 (1998); Telescov. Telesco, 187 Conn. 715, 718 (1982).
Are there issues of fact?
The City claims that the legal status of the mechanics liens at issue is a question of law, and that the facts that are material to this issue are not genuinely in dispute. The lienors listed above do not dispute that the contract appended to the city's motion was in effect between the City and ARC, nor do they dispute that the City has taken back title to the property it conveyed to ARC pursuant to that contract.
Precision Carpentry of Westchester, Inc. states in its brief that the City's allusion in its brief to claims by lienors that the agents of the City assured them that their liens would remain valid constitutes an issue of fact that precludes summary judgment. Precision Carpentry has not, however, supplied any affidavit or other materials to demonstrate CT Page 2175 the existence of such an assurance, and the City's allusion to another party's claim certainly does not constitute an adoption of such a claim as a statement of fact or as an admission.
Similarly, Precision Carpentry states that it is a question of fact whether ARC defaulted, however, Precision Carpentry has not filed any materials to demonstrate that the existence of factual disputes on this point.
Pavarini Construction Co., Inc., has observed in its brief in opposition to the motion that discovery is not complete; however, it did not seek an extension of time to complete discovery necessary to substantiate a claim that the material facts are in dispute. Though Pavarini further asserts that discoverable documents would demonstrate that the City consented to improvements to the property, the City does not dispute that it consented to the performance of the work; indeed, the purpose of the contract was to obtain the construction of an ice rink on the land identified in the contract between the City and ARC. The City claims that it did not consent to pay for the work, since its contract with ARC imposed that duty upon ARC.
The court finds that there is no genuine dispute concerning any of the facts material to the issue of the survival of the mechanics liens upon reversion of title to the land to the City, and that the issue is one of law that can be determined on the basis of the undisputed material facts.
Description of the Transactions
On or before December 2, 1997, the City and/or its Redevelopment Agency was the owner of record of a parcel of land that was identified as a site for an ice rink as part of a plan to revitalize and redevelop downtown Danbury. On December 2, 1997, the City, acting by its Redevelopment Agency, entered into a redevelopment contract with ARC titled "Contract for Sale of Land for Private Redevelopment" ("Contract"). In the Contract, the City agreed to transfer ownership of the site to ARC for one dollar; and ARC agreed, upon acquisition of title to the site, to build an ice rink facility and to complete related improvements on the site in accordance with plans made part of the contract and use the premises only for purposes authorized in the City's redevelopment plan. The City and the Redevelopment Agency ("agency") quitclaimed their interest in the property to ARC on April 22, 1998. The Contract was recorded in the Danbury land records on December 2, 1997; the deed was recorded on April 22, 1998. The deed states that the transfer is "[s]ubject also to all covenants, restrictions, encumbrances, conditions CT Page 2176 and other limitations set forth or referred to in a certain agreement between the Releasors and Releasee entitled "Contract for Sale of Land for Private Redevelopment between the City of Danbury, Connecticut (Acting by and through the Redevelopment Agency of the City of Danbury) and Arc (sic) Danbury, Inc.' (the "Redevelopment Contract"), which contract is recorded on the Danbury Land Records and is incorporated herein by reference. By acceptance of this deed the Releasee agrees that those covenants, restrictions, encumbrances, conditions and other limitations referred to in the Redevelopment Contract which are stated therein to run with the land shall run with the land and shall bind the Releasee, its successors and assigns."
The Contract required ARC, which was identified as "the Redeveloper," to complete the ice rink within eighteen months from delivery of title, that is, by October 22, 1999. Though the contract provided for extensions, it stated at Section 10A that "the completion deadline shall not be extended beyond thirty (30) months from the date of this agreement." At Section 15, the contract prohibited mortgage or other liens or encumbrances "except for the limited purpose of obtaining funds to the extent necessary to complete the project," and provided that no mortgage, lien or encumbrance was to be "created or suffered without the prior approval of the Agency." The contract also required ARC to notify the agency in advance of any encumbrance or lien "that has been created on or attached to the Property . . ." Section 18C(ii) gave ARC a cure period of sixty days from the date of the agency's written demand to remove or discharge or make provisions satisfactory to the agency for payment, removal or discharge of any such unauthorized lien or encumbrance.
The Contract listed failure to achieve removal of unauthorized liens as an act of default which, upon written demand, triggered a right by the agency to take possession of the property and "revest in the City by operation of the filing on the Danbury Land Records a declaration of termination and reversion in favor of the City . . . [of] the estate 
or applicable portion thereof conveyed by the Deed to the Redeveloper."
Section 18(C) of the Contract, which is titled "REVESTING OF TITLE IN CITY UPON HAPPENING OF EVENT SUBSEQUENT TO CONVEYANCE TO REDEVELOPER, provides that in case of the occurrence of any of the listed events of default, including those identified in Section 18C(iii):
 the Agency shall have the right, at its option to reenter and take possession of the . . . Property or any portion thereof, and to terminate (and revest in CT Page 2177 the City by operation of the filing on the Danbury Land Records a declaration of termination and reversion in favor of the City as more particularly described below) the estate (or applicable portion thereof) conveyed by the Deed to the Redeveloper. The conveyance of the Property to the Redeveloper shall be made upon a condition subsequent, which shall be contained in the Deed, that in the event that any of the occurrences specified in subdivision (i), (ii), and (iii) of this Section 18C shall take place and the Redeveloper fails to remedy, end or abrogate such occurrence within the period and in the manner stated in such subdivisions, the Agency, at its option, may declare a termination in favor of the City of the title, and of all the rights and interests in and to the Property (or applicable portion thereof) conveyed by the Deed to the Redeveloper, and that, upon exercise of said option, such title and all rights and interest of the Redeveloper to and in the Property (or applicable portion thereof), shall revert to the City.
Though the contract provided that failure to achieve removal of mechanic's liens was an act of default, it also contained provisions that recognize that such liens may be flied, and it provided for payment to lienors if the City exercised its reversion right:
 SEC. 19 AGENCY'S RESALE OF RE-ACQUIRED PROPERTY; DISPOSITION OF PROCEEDS
 Upon revesting in the City of title to the Property as provided in Section 18, the Agency shall use its best efforts to resell the Property or part thereof (subject to such mortgage liens and leasehold interests authorized in this contract) as soon and in such manners the Agency shall find feasible . . . Upon such resale of the Property, the proceeds thereof shall be applied as follows:
 19.A. First, to reimburse the City and the Agency for (i) all costs and expenses incurred by the City and the Agency, including but limited to, salaries and other personnel costs and legal fees incurred in connection with the recapture, management, and resale of the Property . . . (iii) any payments made or CT Page 2178 necessary to be made to discharge any encumbrances or liens on the Property at the time of revesting of title thereto in the City or to discharge or prevent from attaching any subsequent encumbrances or liens arising from or relating to obligations, defaults, or acts of Redeveloper . . .
ARC first retained Bucon, Inc. as the general contractor for the ice rink facility, and Bucon retained numerous subcontractors. In the spring of 1999, ARC retained Pavarini Construction Co., Inc., to replace Bucon as the general contractor; and Pavarini retained subcontractors. Between March 11, 1999, and April 5, 2000, twenty-two mechanic's liens reflecting a total amount of over $9 million claimed to be due the various lienors were filed against the property by persons who alleged that they had supplied labor or materials to the project. After granting various extensions, the agency found that ARC was in default of its obligation to complete the ice rink facility in timely fashion and of its obligation to remove or discharge the various mechanic's liens that had been filed.
On April 6, 2000, the Agency gave ARC and others written notice of the defaults and demanded cure. As of June 6, 2000, ARC had neither completed the project nor achieved removal of the mechanics liens, and the agency caused its chairman to enter on to the land and declare a reverter of title in the property to the City. On the same date, the City filed and recorded a document titled Declaration of Reverter of Title on the Danbury land records.
Does reversion of title extinguish the mechanics liens at issue?
A. Statutory construction
The City seeks summary judgment on the lienors' claims to foreclose mechanics liens on the ground that the liens are void and unenforceable against it. The lienors, who have represented that ARC was an essentially assetless corporation created for the ice rink project only, and that any claims they have against ARC are probably uncollectible, assert that the City took title subject to the liens. They assert that the City cannot, by conveying city land to a third party subject to a reversion, avoid both the bond requirement provided in Conn. Gen. Stat. § 49-41 for public buildings and the mechanics liens authorized by Conn. Gen. Stat. § 49-33(a). The latter statute provides in pertinent part as follows:
 (a) If any person has a claim for more than ten dollars for materials furnished or services rendered CT Page 2179 in the construction, raising, removal or repairs of any building or any of the appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the plot of land upon which the building is being erected . . . or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim.
 (b) The claim is a lien on the land, building and appurtenances . . . and the claim takes precedence over any other encumbrance originating after the commencement of the services, or the furnishing of any such materials, subject to apportionment as provided in section 49-36. The right to a mechanic's lien is a statutory right in derogation of the common law.
 New England Savings Bank v. Meadow Lakes Realty Co.,243 Conn. 601, 611 (1998); Camputaro v. Stuart Hardwood Corporation,180 Conn. 545, 550 (1980). The Connecticut Supreme Court has stated that the provisions of the mechanic's lien statute "should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials;" New England SavingsBank v. Meadow Lakes Realty Co., supra, 243 Conn. 611; but that "interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction." Id.; Camputaro v. Stuart Hardwood Corporation, supra,180 Conn. 551; Stone v. Rosenfield, 141 Conn. 188, 191 (1954).
It is undisputed that ARC was the owner of the land at the time the mechanic's liens at issue were filed, and that the general contractors performed their work under an agreement with ARC as landowner and that the subcontractors had performed their work with the consent of ARC. The City asserts, however, that because it had a right to retake title in case of breach, the liens either were not valid when filed or, if valid when filed, were extinguished upon the reversion of title.
The Connecticut Supreme Court has not had occasion to determine the effect of a reversion provision on the validity of mechanic's liens filed CT Page 2180 before the right to retake title is exercised. At the time the work was performed and the liens were filed, the owner of the land at issue was ARC. At the time the liens were recorded, then, the City was not a present owner, but only a potential owner, that is, it had a contractual right to resume ownership under certain circumstances. The City argues that this contingent right to resume ownership made it an "owner" even before it exercised its right to reversion.
Section 49-33 does not include a definition of"owner." The City cites no case, and this court has found none, in which an entity that is not the owner of record at the time work is performed by a contractor but who has a contingent right to future ownership, has been held to be an "owner" for purposes of § 49-33. Another statute, Conn. Gen. Stat. § 49-34, requires notice of the filing of a lien to be given to "the owner." When a mortgagee, a bank with a right to foreclose on the property in the event of a default of the owner's obligations under a mortgage note, claimed that a mechanic's lien was invalid because the bank was "the owner" and had not been given notice of the filing of the lien, the Connecticut Supreme Court ruled that the bank was not "the owner." Red Rooster Construction Co. v. River Associates, Inc.224 Conn. 563, 568-6 9 (1993). In deciding Red Rooster, the Court did not restrict its analysis of the issue of which holders of interests in land are "the owner" to the context of the notice provision, § 49-34, but, noting its responsibility to "interpret a statutory scheme as a whole with a view toward reconciling its separate parts in order to render a reasonable overall interpretation, " Red Rooster ConstructionCo. v. River Associates, Inc., supra, 224 Conn. 570-71, the Court considered the meaning of "owner" in § 49-33(a) as well. The Court stated that "General Statutes § 49-33(a) provides that a person is entitled to a mechanic's lien on a property only if the claim to payment arises by virtue of an agreement with, or consent by, the owner of the land. A mortgagee, however, ordinarily does not have the power to subject the property to claims that may give rise to a mechanic's lien, at least before the mortgagee take possession of the property upon a default of the underlying obligation. The use of the term `owner' in § 49-33(a) indicates, therefore, that a mortgagee is not an owner of the property." Id.
The Supreme Court's analysis of § 49-33(a) in Red Rooster leads to the conclusion that the "owner" of the site at the time the contested liens were filed was ARC and only ARC. The general contractor, Pavarini, performed its services both under contract and with consent of ARC. The various subcontractors brought in by the general contractors are likely to be able to establish that ARC consented to their work, which advanced the building project that ARC hired the general contractors to perform. CT Page 2181
The ruling in Papa v. Greenwich Green, Inc., 177 Conn. 295 (1979), counsels no different analysis. In that case, the Connecticut Supreme Court ruled that all unit owners in a condominium complex were owners within the meaning of § 49-33(a), since the lien was filed against common elements which they all owned in common. As the Court stated in that case, "We construe `owners' as used in Public Act No. 75-418, § 1, now codified as General Statutes § 49-34, to include the present unit-owning defendants who acquired an ownership interest before the recording of the mechanic's lien." Papa v. Greenwich, supra, 177 Conn. 303.
Like the mortgagee in Red Rooster, supra, the City had no present ownership interest in the ice rink site after deeding it to ARC in 1998; rather, it had only a contractual entitlement, like that of a mortgagee, to take title in the event of default. Its consent to the mechanic's liens was therefore not required in order for the liens to be valid when filed.
Subsection (b) of § 49-33 provides that a mechanic's lien that satisfies the requirements of § 49-33(a) "is a lien on the land, building and appurtenances or lot." The mechanic's lien statute does not create any exception for liens imposed on property that is subject to reverter. Unless a common law exception exists, the mechanic's liens filed in accordance with § 49-33c(a) while ARC owned the land continue as liens, and subsequent owners, including the City, take title subject to those liens.
The City cites general provisions concerning the nature of the title that reverts upon the exercise of a right of reverter. General observations about the estate that is transferred do not, however, establish the fate of liens filed before the reversion. The City also cites a trial court decision, Battistelli v. Jacobson, 13 Conn. Sup. 196
(1944), in which a trial judge observed that since the party who contracted for services was a lessee, not an owner, a mechanic's lien could attach only to the leasehold interest of the lessee, not to the fee interest of the owner. In the case before the court, by contrast, services were rendered to the title owner of the land, ARC, and unless there is some exception to the general provisions of the mechanic's lien statute, the liens remain in effect upon transfer of title pursuant to the reversion interest of the City.
Common law
The City cites no Connecticut case in which reversion of title to a former owner was held to extinguish properly filed mechanic's liens. The CT Page 2182 lienors allege that they have made improvements to the land with a value of approximately $9 million, and that if such liens are extinguished, the City will have the benefit of their work, a result that is contrary to the remedial purposes of the mechanic's lien statute. The City argues to the effect that the lienors can still maintain an action in quantum meruit. The remedial purpose of the creation of statutory mechanic's liens is in part the purpose of relieving one who furnishes goods and services from having to proceed with a civil proceeding to attach property, and loss of that advantage would not be remedied by the availability of a cause of action in quantum meruit. The Court notes that in other pleadings the City has claimed that no action for unjust enrichment recover, in quantum meruit may be maintained against it.
Numerous Connecticut decisions concerning mechanic's liens turn on the fact that the party that contracted to have work performed was only a lessee or a prospective buyer, not the actual owner of record. SeeCenterbrook, Architects Planners v. Laurel Nursing Services, Inc.,224 Conn. 580 (1993); Hall v. Peacock Fixture Electric Co., 193 Conn. 290
(1984); Batistelli v. Jacobson, supra, 13 Conn. Sup. 196. In those cases, the holdings are based on the fact that the contracting party was not the owner of the land, a requirement of the lien statute.
Where a party is not the record owner, or where the party owns an interest less than fee simple absolute, the Connecticut Supreme Court has, however, recognized mechanic's liens as valid where the party that had contracted for construction services did so to fulfill a condition set forth in the contract by which the vendee was to acquire the property. In New England Savings Bank v. Meadow Lakes Realty Co., supra,243 Conn. 619, the Court observed that "[c]ertain equitable interests arising out of a contract for sale of land may, however, support a mechanic's lien on after-acquired property. The Court specifically noted, not once but twice in New England Savings Bank, supra,243 Conn. 619, 622, that it continues to adhere to the principles at issue in Hannan v. Handy, 104 Conn. 653, 658 (1926), Seipold v. Gibbud,110 Conn. 392, 396 (1930), and Hillhouse v. Pratt, 74 Conn. 113, 117
(1901). The Court characterized those cases as follows: "Where . . . the terms of the contract of purchase contain a direction to the vendee to construct a building upon the premises, those who perform labor or furnish materials in order to enable the vendee to carry out that undertaking have a right of lien which will take precedence over even a purchase money mortgage." New England Savings Bank v. Meadow Lakes RealtyCo., supra, 243 Conn. 619.
The aptness of the analogy to the present case is highlighted by stating the facts of Hannan v. Handy, supra, 104 Conn. 653. Handy agreed CT Page 2183 to buy a lot and house after Holmes built a house on the lot. Holmes hired Hannan to build the house, and Hannan filed a mechanic's lien against the property. The court found that "the consummation of the agreement to sell by the giving of the deed, after the plaintiff's lien attached but before the certificate was filed, does not affect the validity of the lien." Hannan v. Handy, supra, 104 Conn. 659, and that the lien continued in effect when Handy became the owner.
In the case at hand, the vendee, ARC, was building an ice rink to fulfill the terms of its contract with the City. The City's right to retake title can be seen as an interest analogous to the equitable interest of a party that had contracted to buy property recognized inSeipold v. Gibbud, supra, 110 Conn. 392, and Hannan v. Handy, supra,104 Conn. 653. Under the principles recognized by the Supreme Court in these early cases, reaffirmed in New England Savings Bank v. Meadow LakesRealty Co., supra, the mechanic's liens recorded when ARC was the owner of record apply to the title of the later owner at whose behest the building project was undertaken.
Common law of other jurisdictions
The City asserts that this court should adopt the common law of Maryland, citing to a case which it characterizes as extinguishing liens upon reverter. The case on which the City relies is Rockville v. Walker,587 A.2d 1179 (Md.App. 1991). The Maryland Court of Special Appeals concluded that ruling with a remand to the trial court. The case was again appealed, and the Maryland Court of Special Appeals issued a ruling, Rockville v. Walker, 633 A.2d 479 (1993) ("Rockville II") but then granted reconsideration and determined that the analysis that it had used in the ruling cited by the City and in Rockville II was erroneous. In its ruling upon reconsideration, Rockville v. Walker, 640 A.2d 751
(1994) ("Rockville III"), the Maryland appellate court ruled that a mortgage survived reversion of title if it was a mortgage authorized in the contract between the grantor and grantee.
The analysis ultimately applied by the Maryland court was based squarely on principles of contract. The grantee had promised not to mortgage the property in a manner not authorized by the terms of the contract. If the grantee entered into an obligation for an unauthorized mortgage, it was acting beyond its contractual authority, and therefore the mortgage would be voidable. The Maryland appellate court upheld, however, the trial court's ruling that the loan at issue was authorized and that the party that made the loan could foreclose the deed of trust that secured its loan to the grantee, even though the grantor had validly exercised its right of reverter. Rockville III, supra, 640 A.2d 755. CT Page 2184
The enforceability of the deed of trust at issue in Rockville I, II andIII, supra, depended entirely upon the grantee's authority to enter into the financing that the deed of trust secured. The grantee agreed in its contract with the grantor to limit financing in the manner set forth in the deed. If the grantee had no authority to enter into a particular transaction, or if the grantee was under a contractual duty to limit the transaction by subordinating it to the rights of the grantor, then a transaction that was not in accord with the grantee's limited authority could not be enforced against the interest of the grantor. Contrary to the City's view, the analysis in the Rockville cases does not establish as a matter of common law that statutory liens are extinguished when a reverter is exercised upon a condition subsequent.
The only other case that the City cites as holding that reversion under a condition subsequent extinguishes a mechanic's lien contains no such holding, and it appears that the City may have been misled by a mischaracterization in a headnote to the case. In Perry v. Smith, 231 S.W. 340 (Commission of Appeals of Texas, Section B 1921), a grantor conveyed land subject to the condition that it be used for a mill and a gin only. The grantee contracted for the mill and gin to be erected, and the contractor filed a mechanic's lien. The grantee was unable to clear the lien and instead conveyed its title to the contractor "in consideration of the debt." Id. Perry, the successor to the grantor, exercised the right to reverter when the property was no longer being used as a mill and gin. He sued the grantee, Smith, and his vendees. The court ruled that the grantor's successor had a contractual right to retake title from Smith's vendee. At that point, there was no mechanic's lien; rather, the lienor had acquired Smith's title. The court ruled that the original grantor had not waived the condition that required the use of the land as the site of a mill and gin simply because he had consented to the filing of the mechanic's lien. Unlike the parties to the contractual transfers or encumbrances at issue in the cases discussed above, the lienors in the case presently before this court have rights provided by a statute, Conn. Gen. Stat. § 49-33(b), which provides that "[t]he claim is a lien on the land, building and appurtenances. . . ." The rights of the present lienors are thus defined by the statute, not limited by any contract to which they are parties.
In addition to the cases distinguished above, the City cites general propositions of law concerning the nature of certain estates in property jurisprudence. It then argues that the cited definitions must be interpreted to have some application to the viability of statutory liens, a topic not even at issue in the general descriptions of estates that it cites. For example, the City cites Section 50 of the Restatement CT Page 2185 (First) of the Law of Property as authority for its position that statutory liens are extinguished by the reversion of title upon a condition subsequent. The text of this section is as follows:
 Except as modified by the terms of the limitation creating an estate in fee simple defeasible, the power and privilege of the owner of such an estate to create an interest in the affected land are identical with those of an owner having an estate in fee simple absolute therein, but all interests so created are subject to the defeasibility which existed as to the estate of the transferor.
The inapplicability of this statement derives from the fact that while the owner of an estate "creates" by contract such interests as mortgages or assignments, an owner does not create a contractor's mechanic's lien. The lien interest is, rather, one created by statute. While it is true that the holder of an interest in a property can convey no greater right than he holds, the operation of a statutory remedy is not based on the agreement of the holder of title, but proceeds from the authority created by the legislature. Significantly, none of the illustrations or comments that accompany Section 50 of the Restatement (First) of Property involves statutory liens.
Effect of Contract between City and ARC
The City takes the position that ARC's contractors' and subcontractors' statutory rights to file mechanic's liens were abrogated by the content of the Contract for Sale of Land for Private Redevelopment between the City and ARC. None of the lienors was a party to that agreement. The City asserts that they must nevertheless be deemed to have agreed to forego the right to file liens because the text of the Contract was recorded in the Danbury land records and because the deed from the City to ARC contained a reference to this contract.
Even if this court were to find that ARC could bargain away the statutory lien rights of third parties, the lienors convincingly argue that the contract did not clearly put them on notice that their liens would be extinguished upon reverter. On the contrary, the Contract contains provisions that would instead indicate that unauthorized liens, though an act of default, would be treated as valid by the City and that the amounts secured by such liens would be paid.
As has been detailed above, Section 19 of the Contract specifically provides for use of proceeds from resale of the property after reverter to CT Page 2186 discharge "liens on the Property at the time of revesting of title thereto in the City." An escrow agreement that was filed on the land records as part of the contract provides at Section 3b(v) that in the event of reverter, funds released to the redevelopment agency "shall be applied and/or used by the Agency in accordance with the provisions of the Purchase Agreement (including but not limited to discharge of any liens that may exist on the Property)."
The City points to no provision in the contract that would clearly put a contractor or materialman on notice that any mechanic's lien would be extinguished in the event that the City took back title. No provision of the Contract states this result explicitly.
None of the lienors was a party to the Contract between the City and ARC. The City has not demonstrated that any of them agreed to refrain from exercising their statutory right to file a mechanic's lien in the event of nonpayment. Connecticut courts have long held that a contractor or materialman may not be held to have waived its mechanic's lien rights without express and unambiguous contract language by which the contractor or materialman waives such rights. Pero v. Building Company, Inc.,6 Conn. App. 180, 184-85 (1986); Hillhouse v. Duca, 101 Conn. 92, 104
(1924). Such a contract must be supported by consideration. See Bialowansv. Minor, 209 Conn. 212, 216 (1988); Calabrese Development Corp. v.Carpinella, 1992 WL 157501, No. 0900341 (June 16, 1992, Blue, J.)
The appellate courts of this state have, moreover, held that a general contractor "cannot bargain away the lien rights of subcontractors or materialmen who are not themselves privy to the contractor's agreement and who do not agree with the general contractor to waive their rights or to adopt the waiver provision as incorporated in the contract between the general contractor an the property owner." Pero Building Co. v. Smith, supra, 6 Conn. App. 185; see Rene Dry Wall Co. v. Strawberry HillAssociates, 182 Conn. 568 (1980); Seaman v. Climate Control Corporation,181 Conn. 592 (1980). There is similarly no basis for holding that the developer can waive the statutory rights of other parties.
The recording on the land records of the contract between the City and ARC, and the reference to that contract in the deed by which the City transferred the land to ARC is not a basis for finding that the lienors agreed to have their liens extinguished in the event of reverter.
Conclusion
The plaintiff has not presented facts sufficient to establish that the lienors waived their right to file mechanic's liens pursuant to Conn. CT Page 2187 Gen. Stat. § 49-33, and it has not demonstrated that the liens that they filed before reversion of title to the plaintiff upon a condition subsequent were extinguished as a matter of law. The plaintiff's motion for summary judgment is denied.
 Beverly J. Hodgson Judge of the Superior Court