CENTERBROOK, ARCHITECTS AND PLANNERS *v.*
LAUREL NURSING SERVICES, INC., ET AL.
(14513)

PETERS, C. J., CALLAHAN, BORDEN, NORCOTT and KATZ, Js.

Argued November 4, 1992—decision released February 9, 1993

*Deborah J. Blood,* with whom was *W. Campbell Hudson III,* for the appellant (plaintiff).

*Joel Mandell,* with whom, on the brief, was *Jeffrey Mirman,* for the appellee (defendant Coastal Savings Bank).

BORDEN, J. The plaintiff, a partnership known as Centerbrook, Architects and Planners (Centerbrook), appeals from the summary judgment of the trial court declaring Centerbrook's mechanic's lien null and void.[1] Centerbrook claims that the trial court improperly invalidated its mechanic's lien on the property involved in this case (property) because: (1) the named defendant, Laurel Nursing Services, Inc. (Laurel),[2] for whom

---

[1] Centerbrook appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] The other defendants are Coastal Savings Bank, the first mortgagee on the property, which obtained the summary judgment at issue, and Richard Riggio & Sons, Inc., a subsequent mechanic's lienor, which has not participated in this appeal.

Centerbrook had performed its services, had a sufficient equitable interest in the property to subject the property to Centerbrook's lien; and (2) the owner of the property consented to the work performed by Centerbrook so as to subject the property to its lien. We affirm the judgment of the trial court.

The pleadings and the material produced on the motion for summary judgment filed by the defendant Coastal Savings Bank (Coastal) established the following undisputed facts. On July 14, 1989, Centerbrook and Laurel entered into a contract pursuant to which Centerbrook performed certain architectural and engineering services to aid Laurel's acquisition of local permits to operate a day-care center on the property, located in the town of Old Saybrook. In connection with these services, Centerbrook had full access to the property, and attended numerous meetings on site with representatives of Laurel and of the town. Laurel signed the contract as "owner" of the property, and at all times represented that it was acquiring or had acquired the property to open a day-care center.

When it signed the contract with Centerbrook on July 14, 1989, Laurel neither owned nor had contracted to buy the property, which was owned by the estate of Kenneth P. Clark (estate). On July 26, 1989, however, Laurel signed a "purchase and sale agreement" regarding the property, offering to buy the property from the estate for $175,000, to be paid in cash or by a cashier's check. Of that amount, Laurel was to obtain institutional financing in the amount of $150,000. In addition to a mortgage contingency clause and other standard clauses protecting Laurel's interest in purchasing the property, the contract contained the following significant provisions: (1) "10. Additional Provisions: This offer [is] subject to Probate Court approval. Offer is subject to and conditional upon the buyer's ability to obtain the necessary permits and

approvals from the various departments of the Town of Old Saybrook, Ct for the operation of a day-care/learning center at this site. Asbestos must be removed from the cellar of the property, this asbestos is used as an insulator for the heat pipes. The asbestos must be removed from the site prior to closing"; (2) "17. Time to Accept: Unless the BUYER has received a copy of this Agreement, signed by all the parties, on or before July 28, 1989, this offer shall be revoked and the BUYER'S deposit shall be returned"; and (3) "WHEN SIGNED BY ALL PARTIES THIS IS INTENDED TO BE A LEGALLY BINDING CON-TRACT." The estate accepted Laurel's offer by signing this document on July 28, 1989.

On October 16, 1989, the estate conveyed title to the property to Laurel pursuant to the purchase and sale agreement and Laurel mortgaged the property to Coastal, which recorded its mortgage deed on the same day. On December 7, 1989, Centerbrook recorded its mechanic's lien against the property. The lien referred to Laurel's contract with Centerbrook for work commencing July 14, 1989, and ending November 27, 1989, and claimed that "the date of [the] commencing of this lien is the 14th day of July, 1989."

Thereafter, Centerbrook instituted this action to foreclose its mechanic's lien, naming Coastal as a subsequent encumbrancer. The trial court granted Coastal's motion for summary judgment, declaring Center-brook's lien null and void. This appeal followed.

In order to understand Centerbrook's claims on appeal, it is necessary to place them in the context of our case law regarding mechanic's liens. "We recently delineated in *Seaman* v. *Climate Control Corporation,* 181 Conn. 592, 595, 436 A.2d 271 (1980), the two classes of people entitled to claim a lien upon land that they have improved: Those who provide services or

materials in connection with the construction of a building are entitled to claim a lien on the land that they have improved if they fall into one of two categories. Lienors are protected if they have a claim either (1) by virtue of an agreement with or the consent of the owner of the land, or (2) by the consent of some person having authority from or rightfully acting for·such owner in procuring labor or materials." (Internal quotation marks omitted.) *Hall* v. *Peacock Fixture & Electric Co.,* 193 Conn. 290, 293, 475 A.2d 1100 (1984). Centerbrook does not claim to come within the second of these categories, which focuses on whether the person for whom the lienor performed its services was the agent of the owner of the property. See id., 294. Rather, Centerbrook's claims invoke the first category of protected lienors.

Relying on the "remedial intent" of our mechanic's lien statute; General Statutes § 49-33; see *H & S Torrington Associates* v. *Lutz Engineering Co.,* 185 Conn. 549, 553, 441 A.2d 171 (1981); Centerbrook first argues that our case law recognizes "that one may acquire an equitable interest in real property before legal title passes sufficient to be considered an owner for purposes of the mechanic's lien statute." Under this line of argument, Centerbrook contends in effect that it performed its services "by virtue of an agreement with . . . the [equitable] owner"; *Hall* v. *Peacock Fixture & Electric Co.,* supra; of the property, namely, Laurel.

In support of this argument, Centerbrook relies on four cases: *Bridgeport People's Savings Bank* v. *Palaia,* 115 Conn. 357, 161 A. 526 (1932); *Siepold* v. *Gibbud,* 110 Conn. 392, 148 A. 328 (1930); *Hannan* v. *Handy,* 104 Conn. 653, 134 A. 71 (1926); and *Hillhouse* v. *Pratt,* 74 Conn. 113, 117, 49 A. 905 (1901). Centerbrook maintains that these cases stand for the proposition that one who performs services for a buyer of real property has mechanic's lien rights if (1) the buyer's purchase agree-

ment reflects an intent that work must be performed by the buyer on the subject property before title will pass, (2) title in fact passes, and (3) the contract for services that is enforced through the mechanic's lien exists between the contractor and the buyer of the property. Centerbrook argues that any lien based on such work is enforceable against the buyer and takes priority over other encumbrances to the extent that the work performed began before such encumbrances arose.

We first note that Centerbrook does not claim that it is entitled to a mechanic's lien on the property simply because (1) it performed services for Laurel while Laurel had a contract to purchase the property, and (2) Laurel thereafter acquired title to the property. Nor does Centerbrook argue that it had lien rights simply because Laurel's contract with the estate gave Laurel permission to obtain the permits and approvals from the town.

Focusing instead on the requirement that the purchase agreement between the buyer and seller reflect an intent that work on the property "must be performed by the buyer" before title will pass, Centerbrook argues that this case falls squarely within the doctrine of these cases because "the language of the purchase agreement between [the estate] and Laurel was not merely permissive. Laurel was required to obtain all necessary permits and approvals from [the town] before title would pass. The offer for sale was conditioned upon Laurel's ability to obtain such permits and approvals, and the contract would have terminated had Laurel not been able to qualify as a daycare/learning center." We disagree.

Centerbrook reads the relevant cases, and their underlying rationale, more broadly than they warrant. In *Bridgeport People's Savings Bank* v. *Palaia,* supra, this court rejected the claim of a mechanic's lienor to

priority over a purchase money mortgagee where the lienor had delivered materials to the property at the behest of the buyer who thereafter acquired title to the property. The buyer had received oral permission from the seller to begin to erect a house on the property before title passed. Id., 359. We stated that "[t]he extent of the equitable interest acquired by [the buyer] under the agreement with [the seller] is to be determined by the intent of the parties to that agreement. Merely contracting for a title deed and the imposition of the [mortgage] as part of the same transaction without granting [the buyer] specific or implied authority to encumber the land by a lien before that time, cannot be said to create such an equitable estate in [the buyer] that liens could attach before he acquired title. . . .

"An equitable interest which would have supported these liens would have existed if a part of the contract between [the buyer] and the owners had been that [the buyer] should take immediate possession of the property and proceed with the work of construction. The liens would then have attached to the extent of his interest. Contracts of that nature were involved in the following cases. *Seipold* v. *Gibbud,* [supra, 395]; *Hannan* v. *Handy,* [supra, 658]; *Hillhouse* v. *Pratt,* [supra, 117]. It cannot be said that the mere consent to start work constituted an implied contract that he should build thereon or that by beginning work he could create liens on the vendors' land. Mechanics' liens, under our statute, arise where the work is done by authority of the landowner himself, 'or of some person having authority from or rightfully acting for such owner in procuring such labor or materials.' General Statutes § 5105 [now General Statutes § 49-33 (a)]." *Bridgeport People's Savings Bank* v. *Palaia,* supra, 361–62.

Any inference from this language that even a contractual provision allowing the buyer to build on the land would support an equitable interest in the buyer sufficient to impose a lien is dispelled by the court's specific rejection of the buyer's argument to that effect. "The appellants suggest that the rights of the lienors should be the same where the materials were furnished after the vendee was given permission to build, *as where he and the vendor had contracted that he should build, before receiving title,* and they ask how the materialman is to know whether the contract actually stipulates for the building or the vendor has merely consented to it.

"One who renders services or furnishes material in the erection of a building on land which stands of record in the name of one, other than the person who procures the work to be done, is put upon notice, and if he fails to ascertain what rights the procuring party has in the land, he proceeds at his own risk so far as any claim for the payment of his bill out of the land is concerned." (Emphasis added.) Id., 363.

In *Seipold* v. *Gibbud,* supra, we concluded that the buyer of the property had a sufficient equitable interest in the property to support the imposition of a mechanic's lien by her materials supplier. The contract between the seller and buyer of the land, however, required the buyer to complete construction of a house on the land before passage of title, and the purchase price was paid partly in cash and partly by way of a purchase money mortgage back to the seller. Id., 393. Thus, under those facts, the seller had an interest in the completion of the house before passage of title because the value of his mortgage would be enhanced by that completion. In that circumstance, we held that if "the terms of the contract of purchase *contain a direction to the vendee to construct a building on the premises,* those who perform labor or furnish materials in order to enable the vendee to carry out that

undertaking have a right of lien which will take precedence over even a purchase price mortgage." (Emphasis added.) Id., 396.[3]

Similarly, in *Hillhouse* v. *Pratt,* supra, 118, this court upheld the mechanic's lien because the contract between the seller and the buyer required the construction of a house on the property before title would pass, and because the purchase price was to be paid partly by way of a purchase money mortgage back to the seller. We stated that the construction of the house "was, by the express terms of the agreement, required to be built by the vendee . . . while the title remained in the vendor . . . and its construction by [the vendee] to that extent was necessary to the perfection of his equitable title to the property. It was in effect a part of the purchase price to be paid to [the vendor]." Id. Under those circumstances, the buyer had a sufficient equitable interest when he contracted with the materials suppliers such that, "the deed having afterwards been delivered to [the vendee], [the materials suppliers] could enforce their liens against the property as prior liens to the . . . mortgage" on the property. Id., 118–19; see also *Hannan* v. *Handy,* supra, 658 (if contract provides that buyer take possession of land and build upon it, and that deed not pass until completion of building, contract gives buyer sufficient equitable interest in land to support mechanic's lien that attaches to extent of estate afterward acquired under contract of purchase).

From these cases we derive the principle that, in order for the buyer under a contract of purchase of real estate to have a sufficient equitable interest in the prop-

---

[3] We also reiterated that "where a purchaser of land *enters into possession of it and builds in accordance with the terms of the contract of sale* he has such an equitable interest in the land that a mechanic's lien might attach to the extent of that interest." (Emphasis added.) *Seipold* v. *Gibbud,* 110 Conn. 392, 395, 148 A. 328 (1930).

erty to support a mechanic's lien in favor of the buyer's supplier of materials, the provision in the contract providing for the work on the property must be in some sense for the interest or at the behest of the seller of the property.[4] The provision must require, as a condition of the seller's obligations under the contract, that the buyer perform the work at issue. The rationale underlying this principle is that the buyer under those circumstances is improving the land, not only for the buyer's own benefit, but also for the benefit of the record owner. That rationale is what supports the conclusion that the seller has transferred to the buyer, before the buyer takes title to the property, an equitable interest in the property sufficient to support a mechanic's lien, in favor of the buyer's supplier of materials, that attaches to the estate of the buyer after the buyer takes title thereto.

Application of this principle and its rationale to the facts of this case leads us to reject Centerbrook's claim. Contrary to the assertion of Centerbrook, the provision in the contract regarding Laurel's ability to obtain the necessary municipal permits for the operation of a day-care center *is* permissive and did not *require* Laurel to obtain those permits before title would pass. That provision can reasonably be viewed only as intended for the protection of the buyer, Laurel, and not for any benefit of the seller, the estate. The provision was part of Laurel's offer to buy the property, which was specifically made "subject to and conditional upon [Laurel's] ability to obtain" those permits. Thus, if the permits had not been secured, it would have been Lau-

---

[4] We need not explore in this case whether the language in the cases regarding the buyer's taking possession of the property and building thereon supplies an independent ground of equitable ownership in the buyer, or whether it is simply another way of stating the same principle. Centerbrook does not claim that Laurel took possession of the property before taking title to the property.

rel, and not the estate, that would have had the choice of either waiving the condition and closing on the property or terminating the contract. It was Laurel, and not the estate, that sought to use the property for a day-care center. We can conceive of no reason, and Centerbrook presents none, why the estate would have had any interest in the use of the property after passage of title to Laurel. Laurel was to pay cash for the property. Thus, there was nothing in the financing of the transaction that gave a benefit to the estate as a result of those permits. Under these circumstances, the only reasonable construction of the intent of the parties to the contract is that the provision at issue was for the benefit of Laurel and not the estate.[5] Therefore, this contract did not give Laurel an equitable interest in the property, before taking title thereto, sufficient to support a mechanic's lien by Centerbrook on Laurel's estate in the property after Laurel took title thereto.

---

[5] We recognize, as Centerbrook suggests, that ordinarily factual questions involving intent should not be determined by way of summary judgment. "We have also held, however, that even with respect to questions of . . . intent . . . the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." *Wadia Enterprises, Inc.* v. *Hirshfeld,* 224 Conn. 240, 250, 618 A.2d 506 (1992). In this case, Centerbrook adduced nothing in response to Coastal's motion for summary judgment, which relied on the language of the agreement, with respect to this issue, that would have cast any doubt on the otherwise clear import of that language taken in the context of the agreement as a whole.

Furthermore, the parties argued the motion in the trial court on the premise that there were no questions of fact, the trial court decided it on that basis, and the parties briefed the appeal on that basis. It was not until its reply brief that Centerbrook suggested that the agreement between the estate and Laurel presented a question of fact as to the intent of the parties regarding the provision at issue. Absent an indication in this record that the provision in the agreement means something other than what it plainly states, we decide this case on the basis upon which it was tried and decided in the trial court and briefed in this court. See, e.g., *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703, 716, 535 A.2d 799 (1988).

Centerbrook's second argument is something of a mirror image of its first argument. Whereas in its first argument Centerbrook contended that its mechanic's lien arose by virtue of an agreement with the equitable "owner" of the land, namely, Laurel; see *Hall* v. *Peacock Fixture & Electric Co.*, supra; in this argument Centerbrook contends that its lien arises by virtue of the consent of the title owner of the property, namely, the estate. Centerbrook argues that the estate "consented" to the work, in the sense required by our mechanic's lien case law, by signing the agreement, allowing Centerbrook full access to the property and ultimately benefiting therefrom because, had title not passed, the estate would have been the owner of property already approved as a day-care center. We disagree.

"[A] landowner does not subject his property to a mechanic's lien by simply allowing work to be done on it." Id., 295. Nor does the owner's knowledge that the work is being done subject the property to a mechanic's lien. *Newtown Associates* v. *Northeast Structures, Inc.*, 15 Conn. App. 633, 639–40, 546 A.2d 310 (1988). "The consent meant by the statute must be a consent that indicates an agreement that the owner of at least the land shall be, or may be, liable for the materials or labor." *Avery* v. *Smith*, 96 Conn. 223, 228, 113 A. 313 (1921). Although an express contract is not necessary for such a consent, the services must be furnished under circumstances indicating an implied contract by the owner to pay for them. Id.

The facts relied on by Centerbrook fall short of this standard. There is nothing in the agreement, or in anything else produced by Centerbrook on the motion for summary judgment, that indicates that the estate agreed, directly or impliedly, to be liable for Centerbrook's labor. The fact that, had title not passed to Lau-

rel, the estate would then own a parcel on which a day-care center could be operated adds nothing to the strength of Centerbrook's argument. A seller under a sales contract that contains zoning or other, similar conditions for the sole benefit of the buyer would always be similarly "benefited" if the buyer is successful in fulfilling those conditions but the transaction does not close thereafter. To hold that, under those circumstances, the owner of the property consented to a mechanic's lien would vitiate the distinction that we have consistently drawn between, on the one hand, merely granting permission to do the work and, on the other hand, requiring either an express or implied agreement to be liable for the services. In sum, "Connecticut case law clearly indicates that [the estate's] permission did not rise to the level of 'consent' contemplated by" our mechanic's lien statute. *Hall* v. *Peacock Fixture & Electric Co.*, supra, 296.

The judgment is affirmed.

In this opinion the other justices concurred.