[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action seeking payment for work done on a piece of property by an engineering firm. In the relevant portion of the action the engineering firm seeks payment on a bond which was executed by the mortgagee of the property in substitution and dismissal of the plaintiffs' mechanic's lien.
FACTS
The plaintiff, DiCesare-Bently Engineers, Inc. (hereinafter "plaintiff"), filed a three count amended complaint (hereinafter "complaint") on August 19, 1991. The relevant count, count one, is brought against the defendants CT Page 4020 Queensgate Associates Limited Partnership (hereinafter "Queensgate"),[1] Advest Bank (hereinafter "Advest"), and Lawyer's Title Insurance Co. In count three the plaintiff alleges that: (1) it furnished materials and services, beginning on May 26, 1987 and continuing to May 25, 1989, pursuant to a written agreement with Queensgate; (2) that Queensgate never paid for these materials and services; (3) that it filed a mechanic's lien in the amount of $53,711.89 with the Town Clerk of Groton which placed a lien on the subject property commencing May 26, 1987; (4) that such lien was served upon an agent of Queensgate, A. Preston Jump; and (5) that Advest Bank, as principal, and Lawyer's Title Ins. Co., as surety, executed a bond in the amount of $85,000 in substitution and dismissal of the mechanic's lien. The plaintiff seeks a judgment against Advest and Lawyer's Title Ins. Co. on the bond.
Advest and Lawyer's Title Ins. Co. (hereinafter the "defendants") filed an amended answer and nine special defenses on January 10, 1992. The special defenses are as follows: (1) the mechanic's lien is invalid because the services and materials were rendered pursuant to separate agreements; (2) Advest has priority over the mechanic's lien; (3) the services and materials rendered were done so prior to Queensgate's ownership of the property and therefore not the proper subject of a mechanic's lien; (4) the mechanic's lien for claims prior to May 21, 1989 invalid under General Statutes 49-33; (5) the Bond is limited to the amount of the plaintiff's lien which is $53,711.89; (6) if the plaintiff is entitled to any recovery under the Bond it is limited to amounts for services rendered prior to Advest's mortgage; (7) the mechanic's lien is invalid because the plaintiff failed to serve the bank under General Statutes 45-34; (8) the plaintiff's claims for services and materials rendered do not fall within the scope of the services claimable under a mechanic's lien statute; and (9) the mechanics lien statute is unconstitutional because it does not provide a mortgage with due process.
The defendants filed a motion for summary judgment on count one of the plaintiff's complaint on February 5, 1992 on the grounds that: (1) the plaintiff's were not entitled to a mechanic's lien on the property because the party with whom they entered into an agreement did not own the property for which it provided services; (2) any valid lien that the CT Page 4021 plaintiff is entitled to is subsequent and subordinate to Advest Bank's Mortgage; (3) any lien to which the plaintiff's failed to serve Advest Bank with its certificate of mechanic's lien within the time frame provided for the statutes; and (4) if the plaintiff had a valid mechanic's lien under General Statutes 49-33, then said statute violates both the state and federal constitution because it deprives the defendants of property without due process of law.
The plaintiff filed a motion for summary judgment on February 26, 1992.
Both parties filed briefs in support of their motions.
DISCUSSION
A party may move for summary judgment in any action, at any time Practice Book 379. A moving party is entitled to summary judgment if it proves the non-existence of material facts and that it is entitled to judgment as a matter of law. Practice Book 384.
Two classes of persons who provide materials or services to improve land are entitled to claim a mechanic's lien on the land that they have improved. Hall v. Peacock Fixture Electric Co., 193 Conn. 290, 293, 475 A.2d 1100
(1984). See General Statutes 49-33. "Lienors are protected if they have a claim either (1) by virtue of an agreement with or the consent of the owner of the land, or (2) by the consent of some person having authority from or rightfully acting for such owner in procuring labor or materials." Id., quoting Seaman v. Climate Control Corporation, 181 Conn. 592,595, 436 A.2d 271 (1980).
The defendants argue that the plaintiff does not have a valid mechanic's lien on the subject property because Queensgate, with whom it contracted to provide materials and services, did not own the property at the time of the agreement.
The Supreme Court of this state has recently decided the issue of whether a buyer of property has a sufficient equitable interest in the property to support a CT Page 4022 mechanic's lien in favor of a supplier of materials or services. Centerbrook, Architects Planners v. Laurel Nursing Services, Inc., 224 Conn. 580, 584, ___ A.2d ___ (1993). The court annunciated the principle that "in order for a buyer under a contract of purchase of real estate to have a sufficient equitable interest in the property to support a mechanics lien in favor of the buyer's supplier of material, the provisions in the contract providing for the work on the property must be in some sense for the interest or at the behest of the seller of the property. The provision must require, as a condition of the seller's obligation under the contract, that the buyer perform the work at issue. In Centerbrook, the plaintiffs had contracted with the buyer of the subject property to do work on the property. Id., 582. The contract between the buyer and the seller allowed the buyer to enter onto the property to obtain the necessary permits for the construction of a day-care center. Id., 582-83. The court examined this contract provision and stated that it was permissive and did not require the buyer to obtain the permits prior to the passing of title. Id. 589. "The provision was part of Laurel's offer to buy the property, which was specifically made `subject to and conditional upon . . . [the buyer's] ability to obtain' those permits: Thus, if the permits had not been secured, it would have been . . . [the buyer], and not the estate, that would have had the choice of either waiving the condition and closing on the property or terminating the contract." Id., 589-590. This provision, in light of the fact that the seller was not retaining a security interest in the property in which case the improvement of the property would benefit the seller, "can reasonably be viewed only as intended for the protection of the buyer . . . and not for the benefit of the seller. . . ." Id. 589. The court went on the hold that the contract did not give the buyer an equitable interest in the property, before taking title thereto, sufficient to support a mechanic's lien in favor of the plaintiff on the buyer's estate in the property after the buyer took title. Id.
In the instant case, the contract between Queensgate as buyer and the seller of the property contained the following provision:
 11. Seller hereby gives the right of the Buyer to enter upon the property after CT Page 4023 the date of this agreement for the purpose of performing any test, investigation of surveys concerning the property, all of said work to be completed at the sole expense of the Buyer. Buyer agrees to save harmless and defend the Seller from all costs, expenses, damages and liabilities whatsoever arising from any such entry or from the acts of the Buyer or its agents while upon the property. Buyer agrees to supply copies to Seller of all plans, surveys, tests or reports within seven (7) days of receipt of Buyer.
(Defendant's Memorandum dated December 31, Exhibit B.) The contract also provided that if the buyer were not able to obtain the necessary permits the closing would not occur and it would receive its $25,000 deposit back. However, the buyer was required to diligently endeavor to obtain these permits. (Defendant's Memorandum dated December 31, Exhibit B.)
These contract provisions do not meet the test set out in Centerbrook, supra, that "the work on the property must be in some sense for the interest or at the behest of the seller of the property." (Footnote omitted.) Centerbrook, supra, 589. The contract provisions before this court, like the contract provisions before the court in Centerbrook, neither require the work to be done nor does the work to be done benefit the seller. Although, the buyer in the instant case must "diligently endeavor" to obtain permits, this provision is for the benefit of the buyer. This is apparent in that the buyer would have received its deposit back had it not been able to obtain them. Furthermore, once again like in Centerbrook, there is no indication that the seller would retain a security interest which would make the improvement of the land benefit the seller as well as the buyer. Therefore, Queensgate did not have a sufficient equitable interest in the subject property to support a mechanics lien by the plaintiffs.
As the resolution of the validity of the plaintiffs' mechanic's lien is dispositive, the other issues raised by the parties in their briefs need not be addressed. CT Page 4024 Accordingly, the defendants' motion for summary judgment should be granted and the plaintiff's motion for summary judgment should be denied.
O'Connell, J.