[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Tougher Industries, Inc. (Tougher), is a New York mechanical contractor which contracted with general contractor, Gilbane Building Company (Gilbane), in April 1999, to perform mechanical work for the defendant, The Learning Corridor Corporation (LCC), in connection with the construction of a public school facility in Hartford, Connecticut known as the Learning Corridor project. The Learning Corridor is a site of approximately 33 acres which, as constructed, consists of a magnet math, science and technology high school, middle school, Montessori elementary school, magnet theater and performing arts high school, commons building, parking garage and retail space beneath the garage. Pursuant to the contract between Gilbane and LCC, dated October 3, 1997, Tougher was to be paid the sum of $10,440,000 for its work, which it began in the spring of 1999.
The city of Hartford took title to the site on or about March 5, 1999 and, on August 17, 2000, the city entered into a master lease with LCC for the site. By the fall of 2000, the schools were operational. On September 24, 2001, Tougher filed a mechanic's lien in the amount of $5,382,295 against LCC's leasehold interest, pursuant to General Statutes § 49-33.[1] On or about September 20, 2002, Tougher commenced an action seeking to foreclose upon the lien and, on October 2, 2002, LCC filed the instant motion to discharge the lien. By agreement of the parties, a hearing was held to determine the validity of the lien. If the lien is found to be valid, the parties will further address the amount of the lien.[2]
LCC claims that the mechanic's lien is invalid for six reasons. LCC claims (1) that because no work was performed within 90 days of the placement of the lien, it fails to comply with the requirements of General Statutes § 49-34[3]; (2) that Tougher waived its right to lien the property pursuant to Article 3.6 of the contract; (3) that Tougher waived its right to file a mechanic's lien by executing periodic lien waivers to Gilbane throughout the course of the project; (4) that because on March CT Page 3730 31, 1999, the date when Tougher commenced work on the project, LCC was not a lessee of the property, the lien constitutes a lien on after-acquired property; (5) that the city owns the underlying fee interest in the site and public policy precludes the placement of a mechanic's lien on public property; and (6) that § 49-33 (h), the statutory provision permitting the placement of a mechanic's lien on a leasehold interest, does not apply to the present contract because the contract was entered into prior to October 1, 1999, the effective date of the statute.
LCC seeks to discharge the lien pursuant to General Statutes § 49-35a
which states that "if an action for foreclosure of the lien is pending before any court, any party to that action may, at any time, prior to trial . . . move that the lien be discharged or reduced." Section 49-35a
(c) provides, in pertinent part, that: "Upon the hearing held on the application or motion set forth in Section 49-35a, the lienor shall first be required to establish that there is probable cause to sustain the validity of his lien. Any person entitled to notice under Section 49-35a
may appear, be heard and prove by clear and convincing evidence that the validity of the lien should not be sustained." As noted by Tougher, the probable cause standard is the same as that utilized in prejudgment remedy hearings. See Pero Building Co., Inc. v. Smith, 6 Conn. App. 180,182-83, 504 A.2d 524 (1986).
 1.
LCC's first argument is that the lien is invalid because it fails to meet the statutory requirement that the lien be placed within 90 days after work ceases. See General Statutes § 49-34 (1). In the present case, Tougher's certificate and notice of lien states that the last day of work was June 27, 2001. The lien was filed with the Hartford town clerk on September 24, 2001, 89 days later.
According to Tougher's President, William H. Tougher, Jr., the work performed on June 27, 2001 consisted of the installation of two victaulic couplings to connect two pipes together, due to Tougher having previously installed the wrong couplings causing the pipe to leak. Mr. Tougher also testified that, notwithstanding the notice and certificate, other work had been done after June 27, 2001, by Tougher's subcontractor, Johnson Controls, Inc. Edward Carvalho, a representative of Johnson Controls, testified that the controls had been installed in 2000 and his company's work performed after May 2001 was related to software programming to operate a chill water system.
In Martin Tire Rubber Co. v. Kelly Tire Rubber Co., CT Page 373199 Conn. 396, 399, 122 A. 102 (1923), the court held that "[i]f, after the work is substantially done, the claimant for the material furnished or services rendered shall unreasonably delay the completion of the work, the date of beginning of the sixty-day period will be taken as the date when the work was substantially done. No trivial or inconsequentialservice or work done after the substantial completion of the buildingwill extend the time for claiming the lien, or revive an expired lien when an unreasonable period has elapsed since the substantial completion. If the article furnished or the service rendered be trivial, but be required by the terms of the contract of building, this fact will be taken into consideration in determining whether the elapsed period be unreasonable or not. And where a service is performed or material furnished at the request of the owner, it will extend the time for claiming a lien or will revive an expired lien, as to a contract . . . substantially performed. Thus . . . it is held that trivial work done or material furnished will be sufficient to extend the time for filing the lien if done, at the request of the owner, and not for the mere purpose of saving his lien." (Citations omitted; emphasis added; internal quotation marks omitted). This rule was later discussed in F.B. MattsonCompany, Inc. v. Tarte, 247 Conn. 234, 239, 719 A.2d 1158 (1998), where the Supreme Court held that the removal of a contractor's roofing brackets and scaffolding done some five weeks after substantial completion did indeed constitute a lienable service not only because the work was performed at the request of the owner but also because the work itself, that is, the removal of the brackets, constituted a repair of the building.
In Mattson, the court held that:
We previously have concluded that, although the general rule is that the time period for filing a certificate of mechanic's lien commences on the last date on which services were performed or materials were furnished; when work has been substantially completed and the contractor unreasonably has delayed final completion, the time period for filing a certificate of mechanic's lien will be computed from the date of substantial completion. Moreover, when an unreasonable period of time has elapsed since substantial completion of the work, the performance of trivial services or the furnishing of trivial materials generally will not extend the time for filing the certificate past the date of substantial completion. If, however, subsequent to the date of substantial completion, trivial services or materials are provided at the request of the owner, rather than at the initiative of the contractor for the purpose of saving a lien, the furnishing of such work or material will extend the commencement of the period for filing a certificate of mechanic's lien. Thus, in order for the date on which a contractor ceased CT Page 3732 performing . . . services or furnishing . . . materials within the meaning of § 49-34 to be computed as the date of substantial completion, rather than as the date on which services or materials actually were last rendered or furnished, the following conditions must be satisfied: (1) the contractor must have unreasonably delayed final completion; and (2) any services or materials rendered by the contractor subsequent to the date of substantial completion must have been furnished at the contractor's initiative, rather than at the owner's request.
Id., 239-40.
The present case is factually distinguishable from Mattson. The evidence in this case suggests that Tougher had substantially completed its work by September 2000, when the schools opened. The testimony relating to the status of Tougher's work, as well as the information contained in the certificate, reveal that the work done by Tougher in June 2001 was undertaken to correct its own deficient work. Indeed, even Mr. Carvalho testified that the buildings were ready in September 2000 and that the children had heat throughout the winter and that the adjustments made in the summer of 2001 were to automate certain valves that had been manually controlled.
The present case is not one where the owner is claiming unreasonable delay by the contractor. Rather, this is simply a case where the owner maintains that "an unreasonable period of time has elapsed since substantial completion of the work, the performance of trivial services, or the furnishing of trial materials generally will not extend the time for filing the certificate past the due date of substantial completion."Id.; see also Martin Tire Rubber Co. v. The Kelly Tire and RubberCo., supra, 99 Conn. 399.
Documentation provided by the parties further supports this determination. The Contractor's Request for Payment, dated November 27, 2000, for the period November 1 to 30, 2000 (Requisition No. 20), indicates that only $23,967 of work remained on the Tougher adjusted contract of $10,714,207 and that $10,690,240 of work was completed. That exhibit lists the status of each building and indicates that, as for Tougher, the total project was 99.8% complete, with the Montessori building 99.8% complete, the middle school building, 100% complete, the high school/theater building, 99.7% complete, the commons building, 99.7% complete, and the parking garage, 100% complete. The construction manager's certificate, attached to the above document, indicates that Gilbane believed that Tougher was, as of November 30, 2000, 100% complete. CT Page 3733
A Contractor's Request for Payment, dated May 1, 2001, for the time period April 1, 2001 to April 30, 2001 (Requisition No. 25), indicates that for an adjusted contract amount of $10,832,535, exactly that amount had been "completed and stored to date" and that the current amount due was $339,718, with $10,492,817 having previously been paid. It states that the middle school, the commons, the high school/theater, the Montessori school, and the parking garage were all 100% complete.
The lien waivers provided by Tougher also demonstrate that status of completion. Whether effective or not, they do admit that as early as September 25, 1999 and as late as November 30, 2000, the Tougher work was 95% complete. Indeed, the court received into evidence at least fourteen lien waivers signed by Tougher demonstrating the same job completion status. While controversy did arise as to the effect of the lien waivers, this did not occur until May 4, 2000, after Tougher had already acknowledged the completion status many times.
Finally, the court notes that an October 25, 2001 letter from Gilbane indicates that a retainage did exist and covered the outstanding punch list items to be completed by Tougher and other subcontractors. A review of that list shows 22 minor items needing to be addressed, many of which were the responsibility of Johnson Controls. The punch list request was to correct minor deficiencies[4] on a job which was substantially completed eleven months earlier and any claim that this punch list is tantamount to a request by an owner sufficient to extend the commencement of the period for filing a lien is disingenuous and without merit. Tougher's work on June 27, 2001 was, according to the testimony, performed, at its own initiative, to fix a leak because "the wrong coupling had been installed."
Based on the above evidence, this court can only find that the work performed on June 27, 2001 cannot be the basis for the commencement of the 90 day period. Moreover, the work done after June 27, 2001, by Johnson Controls cannot extend the time for claiming the lien. First, the certificate of lien was not based on this work but was based on work performed by Tougher employees. See Mattson Co., Inc. v. Tarte, supra,247 Conn. 239-40. Moreover, even assuming that Tougher could file a mechanic's lien, as its contract clearly precludes the placement of a lien by its subcontractors, it is hard to understand how Tougher can argue that it can utilize its subcontractor's work to justify its lien. This interpretation would render meaningless Article 3.6 of the contract. "In determining the meaning and effect of the controverted language in the [agreement], the inquiry must focus on the intention expressed in the [agreement] and not on what intention existed in the minds of the parties . . . When the plain meaning and intent of the CT Page 3734 language is clear, a clause in a [written agreement] cannot be enlarged by construction. There is no room for construction where the terms of a writing are plan and unambiguous, and it is to be given effect according to its language . . . [E]very provision of the contract must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreement." (Citations omitted; internal quotation marks omitted.) Snydergeneral Corp. v. Lee Parcel 6Associates Ltd., 43 Conn. App. 32, 36, 681 A.2d 1008 (1996).
Furthermore, the Johnson Controls work is part of the punch list work because the job was substantially completed months before June 27, 2001. According to Mr. Carvalho, Johnson Controls was at the site on four occasions after June 2001 to perform training functions and reprogram the chill water valves.[5] Their primary work, as part of Tougher's contract, had been completed many months prior to June 27, 2001. It is the conclusion of this court, therefore, that the project was substantially completed prior to June 27, 2001 and that neither the work performed by Tougher on that date nor the work performed thereafter by Johnson Controls can extend the time for claiming the lien or restart the running of the 90 day period. The September 24, 2001 lien was not timely filed and is, thus, invalid.
 2.
LCC's second argument is that Article 3.6 of the contract constitutes a waiver by Tougher of the right to place any mechanic's liens on the property. Article 3.6 states that: "the Trade Contractor shall save and keep the Construction Manager, the Owner and Owner's property free from all mechanics' and materialmens' liens and all other liens and claims, legal or equitable, arising out of the Trade Contractor's work hereunder." As noted by LCC, the contract identifies the "Trade Contractor" as Tougher, the "Construction Manager" as Gilbane and the "Owner" as LCC. Tougher counters that Article 3.6 does not constitute an express waiver and, even if it did, the waiver fails for lack of consideration. Tougher further counters that LCC is not a proper party to enforce the agreement.
Both parties cite Pero Building Company, Inc. v. Smith, supra,6 Conn. App. 184-85, to support their respective positions. In Pero after the plaintiff sought to foreclose a mechanic's lien, the defendants countered that the lien had been filed in violation of an express contractual provision in which the plaintiff had waived its right to file a mechanic's lien. The relevant contract specifically stated: "the CONTRACTOR agrees that no mechanic's claims or liens will be filed or maintained by CONTRACTOR against the dwelling or other improvements to be CT Page 3735 constructed or against the PROPERTY." Id., 184. The court found that while waiver is usually a question for the trier of fact, "where, however, there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law." Id. The court concluded that given the clear contract language, the trial court should have discharged the lien. Id.; see also SnydergeneralCorp. v. Lee Parcel 6 Associates Ltd. Partnership, supra, 43 Conn. App. 34
(finding that subcontractor waived its right to assert a mechanic's lien when agreement with contractor stated: "Subcontractor covenants and agrees that he shall not at any time file any lien or notice of claim to a lien of any kind or nature whatsoever, not [sic] permit the same to be filed for work performed or materials furnished pursuant to the terms of this agreement or any modification hereof, or for any extra work performed or materials furnished or for any other reason or upon any ground whatsoever, and Subcontractor does hereby waive and relinquish the right to any and all liens or claim of liens as may be permitted or provided for by any provision of law and agrees to execute any and all documents requested by the Contractor regarding said Waiver of Lien").
Article 3.6 is not quite so clear. It does not, as stressed by Tougher, utilize the specific waiver language found in Pero orSnydergeneral. Yet, if the contract language means that it only applies to Tougher's subcontractors or materialmen, why does Article 3.6 say that Tougher shall "save and keep . . . the owner and the owner's property free from all mechanic's liens?" (Emphasis added.) Surely, this provision cannot be interpreted to mean, as Tougher suggests, that all liens does not include a Tougher lien. This interpretation does not square with the contract language which expressly precludes all liens. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." Tallmadge Brothers v. Iroquois Gas TransmissionSystem, 252 Conn. 479, 498, 746 A.2d 1277 (2000).
Tougher's interpretation ignores the provisions in the contract between Gilbane and LCC which are incorporated into its contract. Paragraph 11.5 CT Page 3736 of the contract states: "It is understood that pursuant to applicable law which prohibits the filing of mechanic's liens against public property, the Construction Manager and its Subcontractors and material suppliers are prohibited from filing mechanic's liens against the Project. In the event any such lien has been filed against the Project site, the Construction Manager shall forthwith take such action by bonding or otherwise to remove or satisfy the lien, provided the Owner has discharged its payment obligations to the Construction Manager with regard to the matter which is the cause of the lien."
It must also be noted that Tougher was always aware that it could not lien the real property as it was owned by the city of Hartford. In its brief, Tougher concedes that "[i]t is undisputed that the law does not allow a mechanic's lien to be maintained upon real property owned by a municipality."
Tougher further argues that there was no consideration for the waiver. This argument is also unpersuasive. Article 3.6 does not exist independent of the entire contract nor was it executed after the contract was signed. It was a provision among others in a contract for which Tougher would receive $10,440,000. The Pero court rejected a similar claim of lack of consideration noting that "[t]he plaintiff's argument that there was no consideration given for the waiver provision is likewise without merit. The waiver provision was bargained for and was part of the parties' original agreement and was therefore given in exchange for the original consideration." Pero Building Co. v. Smith,supra, 6 Conn. App. 185.
Tougher has argued, citing Bialowans v. Minor, 209 Conn. 212, 216-17,550 A.2d 637 (1988), that the fundamental purpose of a mechanic's lien waiver, i.e., to enable the owner to get access to funding which, in turn, directly benefits the contractor by increasing its expectation of payment, is lacking in this case. However, paragraph 5.2.3 of the contract between Gilbane and the LCC, incorporated into the Tougher contract, states that LCC and the city of Hartford are, in fact, obtaining funding and that the parties will cooperate to comply with the requirements established by the funding sources. Thus, the scenario in the present case is no different than that discussed in Bialowans.
Tougher finally argues that LCC was not entitled to enforce Article 3.6 because there is no evidence that LCC was intended to be a third party beneficiary of this contract. The documents contradict this argument. Article 4.1 defines the contract documents as consisting not only of the specific contract between Tougher and Gilbane but also, "the Agreement between the Owner and Construction Manager, the conditions of the CT Page 3737 Agreement between the Owner and the Construction Manager . . ." Article 4.3 states that "[t]he Trade Contractor agrees to be bound to and assume toward the Construction Manager all of the obligations and responsibilities that the Construction Manager, by those documents, assumes to the Owner." To suggest that an owner cannot enforce a provision which it required be placed in a contract, for its protection, between its construction manager and subcontractors or, in this case, seek to discharge a lien or defend against the foreclosure of the lien is preposterous. LCC, as owner, clearly has an interest in claims made against it by subcontractors. Indeed, in paragraph 5.5 of the Addendum to the Gilbane/LCC contract, Gilbane is required to "promptly advise the Owner of any claim or demand by a Subcontractor claiming that any amount is due to such Subcontractor."
The case of Christ-Janer v. A.F. Conte Co., 8 Conn. App. 83,511 A.2d 1017 (1986) does not, as suggested by Tougher, preclude LCC from enforcing a provision in the contract between Gilbane and LCC. Tougher's argument that there is no clear and convincing evidence that the parties intended LCC to be a third party beneficiary is belied by the documents. Just as the owner may enforce its contract with Gilbane under section 11.6, it may also seek to discharge the mechanic's lien on the basis that it violates a term of its contract. See Pero Building Co. v. Smith,supra, 6 Conn. App. 184-85.
 3.
LCC's third argument is that by signing the periodic lien waivers, Tougher has waived its right to file a mechanic's lien. Tougher executed at least fifteen periodic lien waivers throughout the project, the first for work performed through September 25, 1999, and the last for work done through November 30, 2000. Each waiver states, in part, that "the undersigned respectively warrants that all cost for labor, material, and subcontract work has been paid covering work completed through _____." Another portion of the waivers provides that "the undersigned do(es) hereby irrevocably waive and release any lien or claim or right to lien, for 95% of the labor or material or both furnished through _____." Tougher's last waiver, dated February 28, 2001, but notarized on March 15, 2001, indicates that it had received $10,155,728, representing 95% of labor and material furnished through November 30, 2000. As noted earlier, in the Request for Payment dated November 30, 2000, the Tougher contract is represented to be 100% complete, with $23,967 due (together with the retainage).
Tougher argues that the periodic lien waivers do not forfeit any claim to a leasehold interest because they do not specifically use that phrase CT Page 3738 and state, rather, that the claim "against the above described premises" is waived. The text also states, however, that the waiver applies "against any funds remaining in the hands of the owner, contractor, or lender for the purpose of paying construction on said premises." This argument thus fails.
Admittedly, Tougher did, in its April 4, 2000 lien waiver, reserve its rights to "any work performed for which change orders have not been mutually agreed upon." Additionally, one waiver executed in August 2000 has a similar reservation. However, eleven waivers executed between May 2000 and March 2001 contain no such reference.[6] On May 4, 2000, Shawn P. Leyden, PSEG Energy Technologies' Vice President and General Counsel wrote to Gilbane indicating that Tougher was reserving its rights to pursue delay damages related to change orders 2-28 and that any lien waiver was not intended to release any claim for direct or indirect costs related to the change orders. Gilbane's response, dated May 5, 2000 and issued through its Vice President and General Counsel, John DiNicola, acknowledged the letter but did not agree with its contents. On October 28, 2000, Mr. Tougher again wrote to Gilbane discussing the above letters and requesting additional compensation for impact costs related to certain change orders.
LCC argues that the signed waivers executed after May 2000 are clear evidence that Tougher has waived its right to lien. In light of the testimony, this court is not convinced that these waivers constitute clear and convincing evidence to support LCC's claim. However, in view of this court's previous finding that Article 3.6 constitutes a bar to the imposition of liens, the issue of waiver is of little import to the resolution of this matter.
 4.
LCC's fourth argument is that the lien is invalid because, on March 31, 1999, the date Tougher commenced work on the project, LCC was not a lessee of the property and, therefore, the lien constitutes a lien on after-acquired property. As previously indicated, Tougher began its work and, in fact, substantially completed most its work long before the city and LCC signed the subject lease on August 17, 2000. In discussing the rights of those parties entitled to lien property, our Supreme Court has stated: "[t]hose who provide services or materials in connection with the construction of a building are entitled to claim a lien on the land that they have improved if they fall into one of two categories. Lienors are protected if they have a claim either (1) by virtue of an agreement with or the consent of the owner of the land, or (2) by the consent of some person having authority from or rightfully acting for such owner in CT Page 3739 procuring labor or materials." (Internal quotation marks omitted.)Centerbrook Architects Planners v. Laurel Nursing Services, Inc.,224 Conn. 580, 583-84, 620 A.2d 127 (1993).
Tougher's memorandum suggests that both categories apply. The first because LCC continued in possession of the property after transferring the fee to the city on March 5, 1999 and the second because LCC was the Program Manager for the city pursuant to paragraph 11.2 of the General Contract with Gilbane.
Centerbrook makes clear, however, that "a landowner does not subject his property to a mechanic's lien by simply allowing work to be done on it . . . Nor does the owner's knowledge that the work is being done subject the property to a mechanic's lien . . . The consent meant by the statute must be a consent that indicates an agreement that the owner of at least the land shall be, or may be, liable for the materials or labor . . . Although an express contract is not necessary for such a consent, the services must be furnished under circumstances indicating an implied contract by the owner to pay for them." (Citations omitted; internal quotation marks omitted.) Centerbrook Architects Planners v. LaurelNursing Services, Inc., supra, 224 Conn. 591. The above referenced addendum to the contract between Gilbane and LCC, makes clear that "the relationship of . . . [LCC] to the [c]ity is that of an independent contractor and that . . . [LCC], in any event, has no power or authority to act as the [c]ity's agent or to otherwise bind the [c]ity whatsoever." Paragraph 11.5 of the contract provides that "it is understood that pursuant to applicable law which prohibits the filing of mechanic's liens against public property, the Construction Manager and its Subcontractors and material suppliers are prohibited from filing mechanic's liens." In light of these provisions, this court cannot find that the city gave consent or authorized LCC to bind it or allow the property to be liened.
Centerbrook and the related case of New England Savings Bank v. MeadowLakes Realty Co., 243 Conn. 601, 706 A.2d 465 (1998), are, as Tougher points out, cases which deal with liens on the entire property and not the leasehold interest. In Centerbrook, the issue was whether certain architectural and engineering services alleged to be required for the purchase and thus performed for the future owner of the real property created an equitable interest sufficient to support a mechanic's lien. In that case, when the ultimate purchaser contracted with the lienor it had no contractual interest in the property. Moreover, the court held that the services were not required for the purchase and thus no benefit had been conferred on the then owner. Centerbrook Architects Plannersv. Laurel Nursing Services, Inc., supra, 224 Conn. 583-92. In New EnglandSavings Bank, the court also addressed the after-acquired property issue CT Page 3740 and held that the lien was invalid because it sought to lien property for services that were rendered before the defendant had acquired title to the property. See id., 615. Thus, the fact that the real property interest in the present case is a leasehold as opposed to a fee is a distinction without a difference. The factual predicate — that is, that the entity requesting the work had no legal interest in the real property when the work was commenced — is the same whether the after-acquired interest is by deed or lease.
Nor does this court agree that LCC had some possessory interest tantamount to a tenancy. Pursuant to contract, LCC was, until August 17, 2000, the program manager for a construction contract and nothing more. As this lien was placed on the leasehold property for work which commenced on March 31, 1999, the lien is invalid as a lien on after-acquired property. See New England Savings Bank v. Meadow LakesRealty Co., supra, 243 Conn. 618.[7]
 5.
LCC's fifth argument is that because the city owns the underlying fee interest in the site, the lease involves a public building and, underNational Fire Proofing Co. v. Town of Huntington, 81 Conn. 632, 71 A. 911
(1909), a mechanic's lien may not be placed on land or buildings belonging to the public.
In that case, the court rejected the use of a mechanic's lien on public property, holding that the words of the statute "if taken literally, cover every kind of building, public or private. It is clear, however, that they could not be construed to embrace buildings belonging to the State . . . Nor do they include any public buildings, belonging to corporations or communities created by the State as governmental agencies for purely public purposes." Id., 633-34. The court further stated that "the original contractor for the erection of a public building for such a public corporation as has been described is always sure of his pay. His debtor commands the resources of the whole community. As no lien is necessary for his protection, it is not to be presumed, in view of what such a lien would put it in his power to do, that the General Assembly intended to give him one. The possessor of a mechanic's lien on real estate can gain title to it by foreclosure. If such a lien can be imposed upon public buildings, they can thus be turned into private buildings. If it can attach to a schoolhouse, it is difficult to see why it would not equally attach to a city hall, a county courthouse, or a county jail. It would be intolerable to put it in the power of a private citizen, in case the negligence of a county should result in his obtaining a foreclosure of a mechanic's lien, to take possession of a courthouse and turn out the CT Page 3741 courts, or of a jail and turn out the prisoners." Id. As a result of this court's previous finding that the lien is invalid, it is not necessary to address this issue.[8]
 6.
LCC's sixth argument is that the new statutory provision allowing the filing of liens against leasehold interests was added to Connecticut's mechanic's lien statutes almost six months after Tougher entered into the contract with LCC and, therefore, does not provide Tougher with a right to lien. LCC argues that the contract upon which the lien is based is dated April 9, 1999 (although signed June 16, 1999) and Tougher commenced the work on March 31, 1999. The effective date of the statute was October 1, 1999. LCC further argues that Connecticut law prohibits the retroactive application of substantive statutes and, moreover, that excerpts from the relevant legislative history reveal an intent by the legislature that the act should apply only to contracts entered into on or after October 1, 1999.
Public Acts 1999, No. 99-153, § 7 amended General Statutes §49-33 by adding a new section, section (h), which created the right to lien leasehold property rights. This new section provides, in its entirety:
If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any real property, and the claim is by virtue of an agreement with or by consent of the lessee of such real property or of some person having authority from or rightfully acting for such lessee in procuring the materials or labor, then the leasehold interest in such real property is subject to the payment of the claim. This subsection shall not be construed to limit any of the rights or remedies available to such person under subsection (a) of this section.
The interpretation of the language of a mechanic's lien statute is an issue of law, not a question of fact. See Thompson and Peck, Inc. v.Division Drywall, Inc., 241 Conn. 370, 375, 696 A.2d 326 (1997). The guidelines for determining whether a statutory provision has retroactive applicability are well settled. General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposed a new obligation on any person or corporation, shall be construed to have a retrospective effect." However, even if a statute imposed a new obligation, it may be applied retrospectively if the legislature so intends. See Toise v. Rowe,243 Conn. 623, 628, 707 A.2d 25 (1998). "We generally look to the CT Page 3742 statutory language and the pertinent legislative history to ascertain whether the legislature intended that an amendment be given retroactive affect . . . As a general rule of law, statutes affecting substantive rights . . . apply prospectively only . . . Procedural statutes generally are applied retroactively absent a clear expression of legislative intent to the contrary . . . To determine if the [statute] . . . should be applied retroactively, we must first determine whether the statute is substantive or procedural." (Citations omitted; internal quotation marks omitted.) Connair v. New Haven, 55 Conn. App. 129, 132, 737 A.2d 971
(1999). "[T]he presumption in favor or prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." (Internal quotation marks omitted.) Johnson v. Commissioner ofCorrection, 258 Conn. 804, 820, 786 A.2d 1091 (2002).
It is clear that § 49-33 (h) is substantive — it creates a new right by giving a creditor the right to lien leasehold property interests that were previously beyond the scope of the lien law. Furthermore, our Supreme Court has recognized that the right to file a mechanic's lien is substantive and not procedural. In Diamond NationalCorp. v. Dwelle, 164 Conn. 540, 543, 325 A.2d 259 (1973), the court determined that "[a] mechanic's lien is a creature of statute and gives a right of action which did not exist at common law."[9] As a statute affecting substantive rights, the usual presumption in favor or prospective applicability applies. As stated previously, however, this presumption may be rebutted if there is a clear legislative intent, expressed either in the language of the statute itself or the pertinent legislative history, that the statute apply retroactively.
Looking first to the statutory language, there is nothing in the text of § 49-33 (h) itself indicating that the legislature intended for it to apply to contracts entered into prior to October 1, 1999. Moreover, an examination of the legislative history further buttresses this conclusion. There is nothing in the legislative history indicating an intent for § 49-33 (h) to apply retroactively. To the contrary, it clarifies an intent that the act apply only to contracts entered into on or after October 1, 1999. In a discussion of concerns about this very issue, Representative Fox stated that "the act shall only apply to contracts effective on or after October 1, 1999." 42 H.R.Proc., Pt. 11, 1999 Sess., p. 3845.
It is the conclusion of this court, therefore, that § 49-33 (h) affects only those contracts entered into on or after October 1, 1999 and that because the contract at issue in the present case was executed in April 1999, the lien based thereon is invalid. CT Page 3743
For the foregoing reasons, LCC's motion to discharge the mechanic's lien is granted because Tougher has not established that there is probable cause to sustain the validity of the lien.
Berger, J.